IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM BORDEN, | ) | CIVIL DIVISION |
| | ) | |
| Plaintiff, | ) | No. 4:23-cv-01486-KM |
| v. | ) | |
| | ) | |
| MAINLINE CONVEYOR SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT MAINLINE CONVEYOR SYSTEMS, INC.'S RESPONSE TO PLAINTIFF'S MOTION *IN LIMINE* TO PRECLUDE CERTAIN TESTIMONY OF <u>GEORGE J. WHARTON, P.E.</u>**

Defendant, Mainline Conveyor Systems, Inc., by and through its undersigned counsel, hereby files its Response to Plaintiff's Motion i*n limine* to preclude certain testimony of Mainline's expert, George J. Wharton, P.E. (Dkt. #29, the "Motion"). For its response, Mainline avers as follows:

1. Mainline Conveyor Systems Inc., ("Mainline"), is a business engaged in the design, sale, construction and installation of mesh conveyor belt systems. (Exhibit A, Terry Smith Dep., pp. 15-16).

2. Plaintiff's employer, Tyoga Container Co., ("Tyoga"), a corrugated board manufacturing company, engaged Mainline to install a mesh conveyor belt system at the ISOWA Flexo Folder Gluer Machine (ISOWA) located in its facility. This installation occurred between 2017-2018. (Exhibit A, p. 51).

3. The conveyor is designed such that when it is set to automatic mode, its photo eye sensor can trigger the conveyor to begin moving when it detects materials on the belt.

4. The conveyor was not designed or intended for anyone to walk across it. (Exhibit A, p.123). At some point after Mainline's installation of the system, Tyoga employees at times placed a yellow plastic step, depicted in Exhibit B, next to the subject conveyor. This step was not

1

manufactured or provided by Mainline and there is no evidence that Mainline was aware of the practice. (Exhibit A, p. 124).

5. At the time of his accident in on June 21, 2022, Plaintiff was employed as a machine operator trainee at Tyoga. (Exhibit C, Plaintiff's Dep., pp. 94-97).

6. At the time of his accident, Plaintiff had already been trained to operate the ISOWA machine on its "pre-feed" side and as a "print-man." Following his operator training, which occurred during the four days immediately prior to his accident, Plaintiff was trained to operate the ISOWA machine in every capacity. (Exhibit C, pp. 94-101).

7. In the course of his training, Plaintiff learned that the conveyor could be energized and "on" even if it was not actually running. (Exhibit C, p. 90). Plaintiff testified that he was told by his night shift supervisor not to walk on the mesh belt conveyors, such as the one where his accident occurred, because they could have electricity running to them even when they did not appear to be turned on and moving. (Exhibit C, p. 90).

8. Plaintiff received training regarding the subject conveyor's photo eye sensor and testified that he understood that when the sensor eye detected materials on the belt, the conveyor would move. (Exhibit C, p. 108). Plaintiff understood what when the sensor eye detected movement, "the conveyor would turn on and head to the strapper." (Exhibit C, pp. 108-109).

9. Plaintiff signed a document as part of his orientation and training that instructed not to walk on the above ground mesh belt conveyors, including the subject conveyor at issue in this case. (Exhibit C, p. 92).

10. For the entirety of his time working at or near the ISOWA machine and the subject conveyor prior to his accident, Plaintiff had never walked across the subject conveyor and always walked around the machine when he needed to get to the other side. (Exhibit C, pp. 99-100). This

was consistent with his training.

11. The date of the accident was the first time that Plaintiff ever walked on the subject conveyor. (Exhibit C, p.100).

12. The matter presently before the Court arises from an accident that occurred on July 21, 2022 at the Tyoga facility. Plaintiff alleges that while he was walking across the subject conveyor belt, he triggered the photo eye sensor of the machine, causing the conveyor to activate. Plaintiff alleges that as a result of the activation, he fell and sustained injury to his knee.

13. Mainline has disclosed George J. Wharton, P.E., as its expert in this matter and provided his Report, attached hereto as Exhibit D, to Plaintiff in accordance with all applicable rules and deadlines.

14. Mr. Wharton has worked as a mechanical engineer for over forty (40) years and is a Registered Professional Engineer in six (6) states, including Pennsylvania. (See Exhibit D, Curriculum Vitae (CV) attached on p. 30).

15. Mr. Wharton is a certified operator of mobile elevated work platforms, telehandlers, and warehouse forklifts. He is a member of various relevant sub-committees, including:

- ANSI/SAIA A92.20 Design, Calculations, Safety Requirements and Test Methods for Mobile Elevating Work Platforms
- ANSI/SAIA A92.22 Safe Use of Mobile Elevating Work Platforms
- ANSI/SAIA A92.24 Training Requirements for the Use, Operation, Inspection, Testing and Maintenance of Mobile Elevating Work Platforms

16. In his Report, Mr. Wharton provided various opinions pertaining to the subject conveyor belt system as well as responses to the opinions rendered by Plaintiff's expert, Mr. Ebersole, an electrical engineer.

17. In developing his opinions and responses to Mr. Ebersole, Mr. Wharton relied on his experience in mechanical engineering, which spans over four decades, and his extensive

training and expertise on mobile elevated work platforms, including training, safety, operation, and all aspects of engineering projects involving this equipment.

18. Plaintiff relies on Federal Rule of Evidence 702 to bar several of Mr. Wharton's opinions. This reliance is misguided, as Rule 702 is flexible, interpreted liberally, and generally favors admission. See *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 594, (1993), *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008).

19. Plaintiff's Motion *in limine* fails to identify a single valid basis for excluding any portion of Mr. Wharton's testimony. Plaintiff's own expert, Mr. Ebersole, is an electrical engineer, and, to quote Plaintiff's Motion, "not an expert in contract interpretation." (Dkt. #29, p. 10). Still, Mr. Ebersole provided opinions regarding the contract in effect between Mainline and Tyoga, Mainline's "duty" and the foreseeability of Plaintiff's accident. (Exhibit E, Ebersole Report, p. 33).

20. Plaintiff has no objection to an engineering expert providing testimony regarding the obligations of various entities involved in this case, only with Mr. Wharton providing testimony that is unfavorable to him.

21. The Federal Rules of Evidence embody a strong preference for admitting any evidence that may assist the trier of fact. *Pineda v. Ford Motor Co.*, 520 F.3d 237 (3d Cir. 2008) (citing F.R.E. 702). An expert is permitted "wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993).

22. The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which requires an expert witness to have "specialized knowledge" regarding the area of testimony. B*etterbox Commc'ns Ltd. v. BB Techs., Inc.*, 300 F.3d 325, 327–28 (3d Cir. 2002). "The basis of

this specialized knowledge can be practical experience as well as academic training and credentials." *Id.*

23.   Courts "have interpreted the specialized knowledge requirement liberally." *Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir.1998).

24.   Rule 702 also requires that an expert's proposed testimony be based on reliable methodology or technique. F.R.E. 702. Plaintiff listed several factors to be considered by courts in evaluating a proposed expert's particular methodology. "These factors are neither exhaustive nor applicable in every case." *Pineda* at 248. District courts should consider any relevant factors in determining reliability. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (3d Cir. 1994).

25.   The evidentiary requirement of reliability is "lower than the merits standard of correctness. *Daubert* states that a judge should find an expert opinion reliable under Rule 702 if it is based on "good grounds," i.e., if it is based on the methods and procedures of science." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994) citing *Daubert* at 592. There is no question that Mr. Wharton, a professional engineer of over forty years with experience designing, selling, and installing conveyor belt systems, as well as experience investigating accidents that involve these systems, has based his opinions on reliable techniques that satisfy the requirements of Rule 702.

26.   Mr. Wharton's testimony is based on his specialized knowledge and analysis of the applicable engineering and industry standards at issue in this matter and will be helpful to the jury at trial. He conducted an investigation and inspection of the equipment and the site of the accident. Mr. Wharton attached his curriculum vitae to the Report and made reference to it as a basis for the opinions contained therein. (Exhibit D).

27. In *Betterbox*, the Court of Appeals for the Third Circuit affirmed the District Court's ruling admitting expert testimony based on "personal knowledge or experience." *Betterbox Commc'ns Ltd. v. BB Techs., Inc.*, 300 F.3d 325, 329 (3d Cir. 2002).

28. Similarly, Mr. Wharton's testimony in this matter is based on his specialized knowledge and experience as well as his analysis of all pertinent information and materials and will be helpful to the jury.

29. First, Plaintiff asserts that Mr. Wharton should be precluded from testifying that Tyoga was "required to assume all liability with respect to safety," an opinion that was rendered in rebuttal to Mr. Ebersole's opinion that Mainline had a "duty to provide training." (Exhibit E, p. 40).

30. Mr. Wharton's opinion on this matter is not based on speculation, but four decades of experience as an engineer. His opinion as to the roles of various parties, such as Tyoga and Mainline, to an engineering project, including the design, installation, and use of a conveyor belt system, is well within his area of expertise. As disclosed in his CV and Report, Mr. Wharton's specialized knowledge includes "Training on Mobile Elevating Work Platforms," and he completed a certification on this specific topic as recently as May, 2022. Moreover, he sits on several sub-committees dedicated to the training and use of mobile elevated work platforms. (Exhibit D).

31. Plaintiff cannot seek to bar this testimony merely because he disagrees with it.

32. In *Pineda*, discussed at length in Mainline's Memorandum of Law, filed herewith, the Court of Appeals for the Third Circuit reversed the District Court's decision to exclude expert testimony and emphasized that Rule 702 favors admission of proposed expert testimony. *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008) (citing F.R.E. 702).

33. Next, Plaintiff moves to preclude Mr. Wharton's testimony that Mainline was not aware of the risk of inadvertent activation of the conveyor sensors until after Plaintiff's accident because Tyoga failed to report the issue. (Dkt. #29, p. 8).

34. Once again, this testimony was provided in response to a claim made by Mr. Ebersole, that the issue was "foreseeable" and that the floor-level conveyors were equipped with thru-beam retro-reflective sensors that Mainline recognized as more accurate. (Dkt. #29, pp. 33-34).

35. In his rebuttal opinion, Mr. Wharton relied on Mr. Schmidt's testimony regarding the decision to use reflective sensors on the floor conveyors to accurately measure the length of passing products. He reviewed the testimony of Mainline and Tyoga employees to apprise himself of all material facts. His opinion is based on his analysis of the information available to Mainline at the time of the accident and his assessment of Mainline's decisions as a professional engineer that has sold, designed, and installed conveyor belt systems. (See Exhibit D).

36. Plaintiff seeks to bar Mr. Wharton from testifying as to his opinion that Mainline was not required to provide a warning prior to automatic startup of the conveyor. This opinion is not based on speculation but Mr. Wharton's review of Plaintiff's testimony regarding his awareness that the conveyor belt could be triggered to move automatically, his knowledge as to the proper use of the conveyor system, as well as his expertise on warnings and training required for mobile elevated work platforms. Mr. Wharton inspected the subject conveyor belt and determined, based on his four decades of experience, that current engineering standards do not require the type of warning suggested by Plaintiff, given Plaintiff's knowledge of the conveyor's automatic start.

37. In addition, Plaintiff moves to bar Mr. Wharton from testifying as to the effect of an audio or visual alarm system on the conveyor. Plaintiff misstates Mr. Wharton's opinion. Mr. Wharton did not opine that had the conveyor been equipped or sold with an audio or visual alarm system it would have been disabled. He opined that based on the configuration of the conveyor systems, "a warning that each individual conveyor was going to start and stop would result in a cacophony of sound and would be a warning that those working nearby would quickly ignore, if they did not disable or mute the warning." (Exhibit D, p. 26).

38. As stated previously, Mr. Wharton is qualified to testify as to his opinion on the effectiveness and merits of proposed warnings and alarm systems based on his specialized experience and knowledge, specifically with conveyor belt systems and system safety. Mr. Wharton has over forty (40) years of experience in this field and his analysis of the merits of proposed warning and alarm systems is reliable and will be helpful to the jury.

39. Finally, Plaintiff seeks to preclude Mr. Wharton from testifying as to the manner in which Tyoga and Plaintiff misused the subject mesh belt conveyor. Mr. Wharton, as an expert in training and safety for mobile belt conveyor systems, is more than qualified to opine as to the training that Plaintiff, or any user of a mobile belt conveyor, should have received from his employer. Mr. Wharton is also qualified to testify as to the steps that the direct user of a mobile belt conveyor, such as Plaintiff, should take to ensure their safety while operating the equipment.

40. Mr. Wharton's CV is replete with training, certifications, and experience that qualify him to testify as to this issue based on his specialized personal knowledge and experience.

41. There is no merit to Plaintiff's Motion to preclude Mr. Wharton's testimony. His opinions are based on his review of the materials in this case as well as his knowledge and experience as a professional engineer that has substantial experience with conveyor belt systems.

42.    If Plaintiff believes that Mr. Wharton's opinions are contrary to the factual record, his recourse is to "explore the facts and assumptions underlying the testimony" during cross-examination. *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408 (3d Cir. 2002).

WHEREFORE, for the reasons set forth above and in the accompanying Memorandum of Law, Mainline respectfully requests that this Honorable Court enter an Order in the attached form denying Plaintiff's Motion *in limine* to preclude certain testimony of George Wharton.

Respectfully submitted,

GORDON REES SCULLY MANSUKHANI, LLP

BY    _____

Brian S. Kane (Pa. I.D. # 65715)
bkane@grsm.com
707 Grant Street
Gulf Tower, 38th Floor
Pittsburgh, PA  15219
Telephone: (412) 588-2286
Facsimile:  (412) 347-5461
*Attorneys for Defendant*

9

**CERTIFICATE OF SERVICE**

      The undersigned counsel does hereby certify that on July 7, 2025 the within **DEFENDANT MAINLINE CONVEYOR SYSTEMS, INC.'S RESPONSE TO PLAINTIFF'S MOTION *IN LIMINE* TO PRECLUDE CERTAIN TESTIMONY OF GEORGE J. WHARTON, P.E.** was filed via the Electronic Filing System. Parties may access this filing through the ECF filing system.

_____
Brian S. Kane