## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM BORDEN, | |
| Plaintiff, | CIVIL ACTION NO. 4:23-CV-01486 |
| v. | (MEHALCHICK, J.) |
| MAINLINE CONVEYOR SYSTEMS, INC., | |
| Defendant. | |

### MEMORANDUM

Before the Court are four motions *in limine* filed by Plaintiff William Borden ("Borden") in anticipation of trial. (Doc. 29; Doc. 30; Doc. 31; Doc. 32). Borden's motions *in limine* seek to preclude (1) certain testimony by George J. Wharton ("Wharton"), the engineering expert offered by Defendant Mainline Conveyor System, Inc. ("Mainline") (Doc. 29); (2) evidence of product misuse or highly reckless conduct (Doc. 30); (3) evidence of assumption of risk (Doc. 31); and (4) evidence that Borden was convicted of driving under the influence. (Doc. 32). For the following reasons, the motions will be **GRANTED in part** and **DENIED in part**.

### I. BACKGROUND AND PROCEDURAL HISTORY

Borden initiated this action on August 10, 2023, by filing a complaint in the Pennsylvania Court of Common Pleas of Tioga County. (Doc. 1-2). On September 7, 2023, Mainline removed this case to this Court due to diversity jurisdiction. (Doc. 1). Borden alleges that while at work at a facility owned by his employer, Tyoga Container Company, Inc. ("Tyoga"), on July 21, 2022, he stepped on a mesh belt conveyor manufactured by Mainline that then activated and threw Borden off the conveyor, allegedly leaving him with severe

lacerations on his left knee and lower extremity. (Doc. 1-2, at 4-7). Borden alleges that Mainline is strictly liable under Pennsylvania law for manufacturing a defective and unreasonably dangerous product.[1] (Doc. 1-2, at 13-16).

Borden filed the motions *in limine* and briefs in support of the motions on June 23rd and June 24th, 2025. (Doc. 29; Doc. 30; Doc. 31; Doc. 32; Doc. 33; Doc. 34; Doc. 35; Doc. 36). On July 7th, 2025, Mainline filed responses and briefs in oppositions to the motions. (Doc. 38; Doc. 39; Doc. 40; Doc. 41; Doc. 42; Doc. 43). On July 11, 2025, Borden filed reply briefs regarding his second and third motions *in limine*. (Doc. 46; Doc. 47). On July 14, 2025, a final pretrial conference was held. Trial is scheduled to begin on Monday, August 11, 2025. (Doc. 28).

## II. STANDARD OF REVIEW

The court is vested with broad inherent authority to manage its cases, which carries with it the discretion to rule on motions *in limine* prior to trial. *See Luce v. United States*, 469 U.S. 38, 41 n.4 (1984); *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 260 (3d Cir. 1983), *rev'd on other grounds sub nom.*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) (noting that the court exercises its discretion to rule *in limine* on evidentiary issues "in appropriate cases"). Courts may exercise this discretion in order to ensure that juries are not exposed to unfairly prejudicial, confusing, or irrelevant evidence. *United States v. Romano*, 849 F.2d 812, 815 (3d Cir. 1988). Courts may also do so in order to "narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990) (citation omitted). In considering motions *in limine*,

---

[1] Borden is withdrawing his negligence and breach of warranty claims. (Doc. 37, at 1).

2

which call upon the court to engage in preliminary evidentiary rulings under Rule 403 of the Federal Rules of Evidence, the Court begins by recognizing that these "evidentiary rulings are subject to the trial judge's discretion and are therefore reviewed only for abuse of discretion. . . Additionally, application of the balancing test under Federal Rule of Evidence 403 will not be disturbed unless it is 'arbitrary and irrational.'" *Ely v. Cabot Oil & Gas Corp.*, No. 3:09-CV-2284, 2016 WL 454817, at *2 (M.D. Pa. Feb. 5, 2016) (citing *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1213 (3d Cir. 1995) (citations omitted)); *see Bernardsville Bd. of Educ. v. J.H.*, 42 F.3d 149, 161 (3d Cir. 1994) (reviewing *in limine* rulings for abuse of discretion).

The Federal Rules of Evidence can be characterized as evidentiary rules of inclusion, which are designed to broadly permit fact-finders to consider pertinent factual information while searching for the truth. *Ely*, 2016 WL 454817, at *3. The grounds for exclusion of evidence are described as an exception to the general rule favoring admission of relevant evidence. *Ely*, 2016 WL 454817, at *3. The court's discretion in considering evidentiary rulings should consistently be exercised in a fashion which resolves all doubts in favor of the admission of relevant proof in a proceeding. *Ely*, 2016 WL 454817, at *3. Only where the relevance of that proof is substantially outweighed by some other factors, should admission be denied. *Ely*, 2016 WL 454817, at *3. Evidence is "relevant" if its existence simply has "any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401(a)-(b).

However, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. The balancing test under Rule 403 provides as follows:

3

> [t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Fed. R. Evid. 403.

Federal Rule of Evidence 702 governs the admissibility of expert testimony and requires an expert witness to have "specialized knowledge" regarding the area of testimony. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> **(b)** the testimony is based on sufficient facts or data;
>
> **(c)** the testimony is the product of reliable principles and methods; and
>
> **(d)** the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

"Rule 702 has three major requirements: (1) the proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge [, *i.e.,* reliability]; and (3) the expert's testimony must assist the trier of fact [, *i.e.,* fit]." *United States v. Schiff,* 602 F.3d 152, 172 (3d Cir. 2010) (alterations in original) (quoting *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008)).

In general, the Federal Rules of Evidence embody a strong preference for admitting any expert evidence that may assist the trier of fact. Fed. R. Evid. 402. Moreover, Rule 702 "has a liberal policy of admissibility." *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997). First, an expert is qualified if "the witness possess[es] specialized expertise."

4

*Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). The United States Court of Appeals for the Third Circuit interprets the qualifications requirement liberally, and notes that "a broad range of knowledge, skills, and training qualify an expert as such." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994)*; Betterbox Commc'ns Ltd. v. BB Techs., Inc.*, 300 F.3d 325, 327-28 (3d Cir. 2002) ("[T]his specialized knowledge can be practical experience as well as academic training and credentials . . . ."). Thus, "it is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate." *Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 782 (3d Cir. 1996); *see Pineda*, 520 F.3d at 244 & n.11 (collecting cases that illustrate the permissive nature of qualifications requirement). "However, at a minimum, a proffered expert witness must possess skill or knowledge greater than the average layman." *Betterbox*, 300 F.3d at 328 (quotation omitted).

The second requirement under Rule 702 is that "the process or technique the expert used in formulating the opinion is reliable." *Paoli*, 35 F.3d at 742. Therefore, "the expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief." *Paoli*, 35 F.3d at 742 (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (1993)). The Supreme Court noted in *Daubert v. Merrell Dow Pharmaceuticals, Inc.* that the assessment of whether testimony is based on a reliable foundation is "flexible." 509 U.S. at 594.

The third and last requirement under Rule 702 is "that the expert testimony must fit the issues in the case." *Schneider*, 320 F.3d at 404. This requirement is satisfied where the "expert testimony proffered. . . is sufficiently tied to the facts of the case that it will aid the

jury in resolving a factual dispute." *Downing*, 753 F.2d at 1242; "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Daubert*, 509 U.S. at 591-92. Although the applicable standard for determining "fit" is "not that high," it is nonetheless "higher than bare relevance." *Paoli*, 35 F.3d at 745.

As a final note, in performing its gatekeeping function to determine whether an expert's proffer is reliable and relevant under *Daubert* and Rule 702, the trial court "is not to weigh the evidence relied upon or determine whether it agrees with the conclusions reached therein." *Walker v. Gordon*, 46 F. App'x 691, 695 (3d Cir. 2002) (not precedential) (citing *Breidor v. Sears, Roebuck & Co.*, 722 F.2d 1134, 1138-39 (3d Cir. 1983) ("Where there is a logical basis for an expert's opinion testimony, the credibility and weight of that testimony is to be determined by the jury, not the trial judge.")).

The Court now turns to each of the motions *in limine* filed by Borden.

## III. DISCUSSION

### A. MOTION *IN LIMINE* TO PRECLUDE CERTAIN EXPERT TESTIMONY

Borden's first motion *in limine* seeks to preclude certain testimony by Wharton. (Doc. 29; Doc. 36). Borden does not contest Wharton's expertise or qualifications as an expert; rather, he challenges the reliability and relevance of certain opinions contained in Wharton's expert report. (Doc. 36, at 8). Specifically, Borden argues Mainline should be precluded from rendering opinions that: 1) "Plaintiff's employer, Tyoga was 'required' to assume liability for the safe use of the subject conveyor and training personnel pursuant to its contract with Defendant Mainline, thereby relieving [Defendant] of its own failure to provide the personnel training it had contractually agreed to provide," 2) Mainline "was not aware of the risk of inadvertent activation of the conveyor sensors until after Plaintiff's accident because Tyoga

had failed to report the issue to [Defendant]," 3) Mainline "was not 'required' to supply any warning of the risk of automatic startup," 4) "had the conveyor been equipped and sold with an audio or visual alarm system, it would have been disabled by Tyoga," and 5) "Plaintiff's accident was the result of failing to utilize controls to deactivate the conveyor or comply with Tyoga operation and procedures that were only developed by Tyoga after Plaintiff's accident." (Doc. 36, at 8).

### 1. Wharton's opinion that Tyoga was "required" to assume liability for the conveyor

Borden first seeks to preclude Wharton from testifying that "Plaintiff's employer, Tyoga was 'required' to assume liability for the safe use of the subject conveyor and training personnel pursuant to its contract with Defendant Mainline, thereby relieving Mainline of its own failure to provide the personnel training it had contractually agreed to provide." (Doc. 36, at 8). Borden avers that this opinion is not reliable because Wharton is an engineering expert, and not an expert on contract interpretation. (Doc. 36, at 11-12). Mainline contends that this opinion is admissible because Wharton offers this opinion in his expert report based off Wharton's four decades of experience as an engineer and in response to a statement by Daryl L. Ebersole ("Ebersole"), Plaintiff's engineering expert, that Mainline had a duty to provide training for the conveyor. (Doc. 43, at 6-7).

Testimony from an expert in a particular industry may be considered reliable and admitted if the expert is testifying as to the "customs and practices of a particular industry." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 218 (3d Cir. 2006). However, an expert may not testify as to the law governing the case or as to legal duties arising out of a specific contract.

*See Berckeley Inv. Grp., Ltd.*, 455 F.3d at 218; *see also Allscripts Healthcare, LLC v. Andor Health, LLC*, No. CV 21-704-MAK, 2022 WL 3021560, at \*26 (D. Del. July 29, 2022).

Wharton discusses Tyoga "assum[ing] liability" for the conveyor in a portion of his report which responds to portions of Ebersole's report. (Doc. 29-3, at 25). Ebersole's report claimed that a purchase quote from Mainline stated that Mainline would provide training on conveyor's operation, and in response Wharton states:

> The referenced portion of the quote only said that Mainline's responsibilities were start-up of the system and training of operators. No mention of training on safe operation. On the other hand, one of the Conditions of Sale within the quote stated under Safety Devices, 'Purchaser assumes all liability, with respect to safety, for the proper use of Seller's equipment and for the proper training of all persons using Seller's equipment.' With the equipment having been installed in 2018 and Mr. Borden not being hired until 2022, it was up to Tyoga supervisors and operators to train Mr. Borden properly and Tyoga was required to assume all liability with respect to safety. No evidence has been provided that Mainline failed to warn those operators trained initially that they should not walk on elevated mesh belt conveyors, at least without locking them out.

(Doc. 29-3, at 25).

In the above excerpt from Wharton's report, Wharton asserts that Tyoga "assume[d] all liability with respect to safety" and his opinion is based on the text of a contract. (Doc. 29-3, at 25). Wharton is not offering an opinion as to "customs and practices" of the conveyor manufacturing industry, but rather, is impermissibly interpreting a particular contract. *See Berckeley Inv. Grp., Ltd.*, 455 F.3d at 216; *see also Allscripts Healthcare, LLC*, 2022 WL 3021560, at \*26. Accordingly, Borden's motion to preclude Wharton from testifying that Tyoga "was 'required' to assume liability for the safe use of the subject conveyor and training personnel pursuant to its contract with Defendant" is **GRANTED**. (Doc. 29).

**2. Wharton's opinion that Mainline was "not aware of the risk" of inadvertent activation.**

Borden moves to preclude Wharton from testifying that Mainline "was not aware of the risk of inadvertent activation of the conveyor sensors until after [Borden]'s accident because Tyoga had failed to report the issue." (Doc. 36, at 8). Borden argues this opinion is not reliable because it is based on subjective knowledge and is contradicted by testimony from Mainline's representatives. (Doc. 36, at 12-13). Borden further contends that Mainline's subjective knowledge is not relevant to a strict products liability suit. (Doc. 36, at 12-13). Mainline avers that Borden's motion should be denied because the disputed portions of Wharton's report were written in response to Ebersole's claim that the risk of inadvertent activation was "foreseeable." (Doc. 43, at 8).

Expert testimony is neither reliable nor admissible where it offers an opinion on individual or entity's subjective state of mind, beliefs, or knowledge. *See Quagliarello v. Dewees*, 802 F. Supp. 2d 620, 626 (E.D. Pa. 2011); *see also Kula v. United States*, No. 4:17-CV-02122, 2021 WL 1600140, at *5 (M.D. Pa. Apr. 23, 2021). However, in the products liability context, an engineering expert may provide reliable testimony, based on their expertise on engineering, mechanics, or product design, regarding the safety of a product's design and the viability of alternative designs. *See Perez v. Townsend Eng'g Co.*, 545 F. Supp. 2d 461, 464 (M.D. Pa. 2008) (finding an engineering expert was permitted to testify as to the safety of a skinning machine design and the safety of a proposed alternative design); *see also Knight v. Avco Corp.*, No. 4:21-CV-00702, 2024 WL 3746269, at *20-22 (M.D. Pa. Aug. 9, 2024) (finding an engineering expert could testify as to the safety of a helicopter design).

Borden mischaracterizes Wharton's opinion. Contrary to Borden's assertion that Wharton offered an opinion regarding Mainline's subjective knowledge of the risk of inadvertent activation, the pages of Wharton's report to which Plaintiff cites contest a claim in Ebersole's report regarding the relevance of workers walking over other types of conveyors. (Doc. 29-3, at 22-23, 25). Ebersole submits that Mainline should have foreseen workers walking over the conveyor in question because Tyoga workers walk over other types of conveyors. (Doc. 29-3, at 22-23, 25; Doc. 36, at 8, 12-13). In response, Wharton argues that Ebersole's claim is overly simplistic because the conveyor's mechanics and design are different than other conveyors. (Doc. 29-3, at 22-23, 25). Wharton states "[i]t is an over-simplification to say it should be foreseeable that Tyoga employees would believe it would be reasonably safe to cross the elevated mesh belt conveyor because of the similarity to the floor-level mesh belt conveyor. The differences between the conveyors go beyond the elevation difference." (Doc. 29-3, at 22). Wharton then discusses the design and functional differences between this conveyor and other conveyors. (Doc. 29-3, at 22). Wharton's report is not opining on subjective knowledge but is discussing the safety of this conveyor's design as compared to other types of conveyors. (Doc. 29-3, at 22-23, 25). An engineer may present reliable testimony on such matters of function, safety, and alternative designs. *See Perez*, 545 F. Supp. 2d at 464; *see also Knight*, 2024 WL 3746269, at *20-22. Because Wharton does not provide an opinion as to Mainline's subjective awareness of the risk of inadvertent activation,

Borden's motion *in limine* to preclude Wharton from testifying that Mainline "was not aware of the risk of inadvertent activation" is **DENIED**.[2] (Doc. 29).

### 3. Wharton's opinion that Mainline "was not 'required' to supply any warning of the risk of automatic startup"

Borden avers that Wharton's opinion that Mainline "was not 'required' to provide warning decals to caution of the risk of automatic activation of the Mesh Belt Conveyor" is unreliable, and he should be precluded from testifying as to this portion of his opinion. (Doc. 36, at 13). According to Borden, a reliable opinion cannot be based on speculation regarding an individual's subjective mental state, and Wharton based this opinion in his report on speculation that the warning "would not have factored into [Plaintiff's] decision whether or not to cross the conveyor." (Doc. 36, at 13). Mainline avers that this opinion is permissible because it is based on Wharton's review of Borden's testimony, as well as his expertise on conveyors, and is not speculating about Borden's subjective motivations. (Doc. 43, at 9).

Expert testimony regarding an individual's subjective motivations or beliefs is unreliable and thus, inadmissible. *See Quagliarello*, 802 F. Supp. 2d at 626 (E.D. Pa. 2011); *see also Kula*, 2021 WL 1600140, at *5. Borden disputes the following opinion from Wharton's expert report: "[Plaintiff] had been trained that the photoelectric sensors controlled the mesh belt conveyor movement and knew that prior to his fall. The presence of a warning sticker that the conveyors start automatically would not have factored into his decision whether or not to cross the conveyor." (Doc. 29-3, at 27; Doc. 36, at 13). The phrase "would not have factored into his decision" indicates Wharton is speculating as to Borden's objective beliefs,

---

[2] This ruling is without prejudice to Borden raising this motion at the time of trial should Wharton attempt to testify as to Wharton's subjective awareness of the risk of inadvertent activation.

motivations, and mindset, and such speculation is neither reliable nor admissible. *See Quagliarello*, 802 F. Supp. 2d at 626; *see also Kula*, 2021 WL 1600140, at *5. Accordingly, Borden's motion to preclude Wharton from testifying that Mainline "was not 'required' to provide warning decals to caution of the risk of automatic activation of the Mesh Belt Conveyor" based on his assessment of whether Borden would have heeded such a warning is **GRANTED**. (Doc. 29).

### 4. Wharton's opinion that "had the conveyor been equipped and sold with an audio or visual alarm system, it would have been disabled by Tyoga"

Borden seeks to preclude Wharton from testifying that "had the conveyor been equipped and sold with an audio or visual alarm system, it would have been disabled by Tyoga." (Doc. 36, at 14). According to Borden, this opinion is unreliable because it is based on speculation regarding what Tyoga would have done in a hypothetical scenario. (Doc. 36, at 14). Mainline avers that Borden is mischaracterizing Wharton's expert report and argues that Wharton offered an opinion as to what a workplace would sound like if multiple similar conveyor systems all had warning alarms. (Doc. 43, at 9).

The disputed portion of Wharton's expert report states:

> Because there were two zones of accumulation between the ISOWA and the bundle tier, the conveyors have to run to fill the zones and stop when the next zone downstream is full. As a result, the conveyors start and stop with every single bundle of boxes. A warning that each individual conveyor was going to start would result in a cacophony of sound and would be a warning that those working nearby would quickly ignore, if they did not disable or mute the warning.

(Doc. 29-3, at 27).

Wharton's opinion is not that Tyoga would have turned off an alarm system, but rather it is that typically, multiple sets of conveyors function at the same time and the sounds of alarms

would be overwhelming if each conveyor is equipped with an alarm. (Doc. 29-3, at 27). An engineer may reliably testify as to the feasibility or safety of alternative designs. *See Perez*, 545 F. Supp. 2d at 464; *see also Knight*, 2024 WL 3746269, at *20-22. Here, Wharton is testifying as to the feasibility of an alarm warning system based on his knowledge and experience regarding how conveyors are utilized and function. (Doc. 29-3, at 27). Such testimony is sufficiently reliable and admissible. *See Perez*, 545 F. Supp. 2d at 464; *see also Knight*, 2024 WL 3746269, at *20-22. Because Wharton does not offer an opinion that Tyoga would have turned off an alarm warning alarm system, Borden's motion to preclude Wharton from testifying that Tyoga would have turned off an alarm warning system is **DENIED**. (Doc. 29).

### 5. Wharton's opinion relying on procedures developed after Borden's accident

Finally, Borden moves to preclude Wharton from testifying that "Plaintiff's accident was the result of failing to utilize controls to deactivate the conveyor or comply with Tyoga operation and procedures that were only developed by Tyoga after Plaintiff's accident." (Doc. 36, at 8). Wharton's report specifically includes a photograph of a policy that Wharton states "was probably developed/posted after the subject incident." (Doc. 29-3, at 20). The parties agreed during the July 14, 2025, final pre-trial conference that Wharton will not testify as to any policies developed or posted after Borden's accident. Accordingly, Borden's motion to preclude Wharton from testifying that "Plaintiff's accident was the result of failing to utilize controls to deactivate the conveyor or comply with Tyoga operation and procedures that were only developed by Tyoga after Plaintiff's accident" is **GRANTED**. (Doc. 29).

B. Motion *in Limine* to preclude evidence of product misuse and highly reckless conduct

Borden's second motion *in limine* seeks to preclude all evidence and testimony suggesting that Borden's accident was the result of product misuse or highly reckless conduct. (Doc. 30; Doc. 35). Borden argues that Pennsylvania law bars Mainline from presenting evidence of product misuse or highly reckless conduct in this strict liability action because Mainline cannot establish that Borden's conduct was either outrageous or unforeseeable to Mainline. (Doc. 35, at 10-12). Borden further avers that evidence of product misuse or highly reckless conduct must be precluded because Mainline cannot establish Plaintiff's conduct was the sole cause of his injuries. (Doc. 35, at 9-15). Mainline counters that it may present evidence of product misuse or highly reckless conduct because the jury must decide whether Mainline has met its burden to prove its affirmative defenses. (Doc. 41, at 8-10).

Federal courts apply Pennsylvania law to determine whether evidence of a plaintiff's conduct prior to being injured is admissible in Pennsylvania strict liability suits. *Dillinger v. Caterpillar, Inc.,* 959 F.2d 430, 445 (3d Cir. 1992) (applying Pennsylvania law). Generally, "questions of negligence should not be introduced in products liability actions." *Jara v. Rexworks Inc.*, 718 A.2d 788, 793 (Pa. Super. Ct. 1998). However, "the defendant is permitted to introduce evidence that the plaintiff assumed the risk or misused the product, and possibly may introduce evidence that the plaintiff engaged in highly reckless conduct to defeat a products liability claim." *Dillinger*, 959 F.2d at 445. The defendant bears the burden of proving these affirmative defenses. *See Reott v. Asia Trend, Inc.,* 618 Pa. 228, 240 (2012); *see also Cote v. Schnell Indus.*, No. 4:18-CV-01440, 2022 WL 16815032, at *6 (M.D. Pa. Nov. 8, 2022).

14

Product misuse and highly reckless conduct are both affirmative defenses that courts analyze together. *See Reott*, 618 Pa. at 244; *see also Cote*, 2022 WL 16815032, at *6. "Both misuse and highly reckless conduct involve a plaintiff's unforeseeable, outrageous, and extraordinary use of a product." *Reott*, 618 Pa. at 243. For a court to admit evidence of product misuse or highly reckless conduct, a defendant must first present evidence that a plaintiff's conduct was "unforeseeable [to the Defendant] or outrageous." *Reott*, 618 Pa. at 242 (citing *Childers v. Power Line Equip. Rentals*, Inc., 452 Pa. Super. 94, 108 (1996)); *see also Cote*, 2022 WL 16815032, at *6. To meet this requirement, "the burden is on the defendant to demonstrate that the injured party or decedent 'knew or had reason to know of facts which created a high degree of risk of physical harm to himself or that he deliberately proceeded to act, or failed to act, in conscious disregard of that risk.'" *Reott*, 618 Pa. at 250 (quoting *Childers*, 452 Pa. Super. at 106). Product misuse and highly reckless conduct do not require a plaintiff to have subjective knowledge that a product was defective. *See Reott*, 618 Pa. at 243. Even if a defendant establishes a plaintiff's conduct was unforeseeable or outrageous, evidence of product misuse or highly reckless conduct is still inadmissible unless the defendant further establishes that the plaintiff's conduct was the sole or superseding cause of the accident. *Reott*, 618 Pa. at 249; *see also Cote*, 2022 WL 16815032, at *8. A user's negligent conduct is not relevant if the product defect contributed in any way to the harm, but where the defense offers evidence to show that the accident at issue was ***solely*** the result of plaintiff's conduct, and not a defective product, it is relevant and admissible for proving causation. *Jara*, 718 A.2d at 793.

The Pennsylvania Supreme Court has determined that the terms "sole cause" and "superseding cause" are indistinguishable. *See Reott,* 618 Pa. at 249; *see also Cote*, 2022 WL 16815032, at *8. To meet the sole or superseding cause requirement, the defendant must show

that the plaintiff's injury would have occurred regardless of whether alleged defects in the suspect product were cured. *Jara*, 718 A.2d at 794; *see also Reott*, 618 Pa. at 250; *see also Cote*, 2022 WL 16815032, at *8. "[M]isuse and causation are questions of fact." *Nathan v. Techtronic Indus. N. Am., Inc.*, 92 F. Supp. 3d 264, 275 (M.D. Pa. 2015); *see also Cote*, 2022 WL 16815032, at *8. Because of this, courts should not remove questions of product misuse or highly reckless conduct from the jury unless there is no factual dispute over whether the plaintiff's highly reckless conduct or misuse was the sole or superseding cause of the accident. *See Cote*, 2022 WL 16815032, at *8.

Mainline has submitted deposition testimony of Borden from which a reasonable jury may infer that Borden knew walking on the conveyor was unsafe but did so anyway. (Doc. 40-3; Doc. 41, at 5-6). Based on this, there is a question of fact for the jury regarding whether Borden's conduct was unforeseeable or outrageous. *See Reott*, 618 Pa. at 250; *see also Cote*, 2022 WL 16815032, at *7. However, Mainline is unable to establish that Borden's conduct was the ***sole or superseding cause*** of his injuries. *Jara*, 718 A.2d at 794; *see also Cote*, 2022 WL 16815032, at *8.[3] There is no dispute of fact that Borden walked on the conveyor, the

---

[3] In *Jara v. Rexworks, Inc.*, the plaintiff was standing on top of a conveyor belt and then thrown off it when the belt was activated. 718 A.2d at 794. The court found that had the conveyor belt warned the plaintiff that it was about to start, the plaintiff would have stepped off and not been thrown. 718 A.2d at 794. Because of this, the defendant could not show plaintiff's injuries would have occurred had the products defects been cured. 718 A.2d at 794. The same logic applies here. Mainline avers *Jara* is distinguishable because *Jara* was decided after a jury already found the suspect conveyor belt to be defective. (Doc. 41, at 9). However, the *Jara* court determined that the trial court should not have "submit[ed] the question of superseding cause to the jury" and this question should have been submitted to the jury prior to the jury finding a defect. 718 A.2d at 794. Here, Borden's conduct was not the sole cause of his injuries because the undisputed facts show the conveyor threw him off without warning and thus, the conveyor's lack of warning may have been a contributing factor to the accident. (Doc. 1-2, at 6-7; Doc. 44, at 3). As such, Mainline is precluded from presenting evidence of

16

conveyor activated, and Borden fell after the conveyor started moving. (Doc. 1-2, at 6-7; Doc. 44, at 3). Mainline cannot establish that Borden's conduct was the sole cause of his injury, or that the accident would have occurred even if any alleged defects in the conveyor were cured. Accordingly, Plaintiff's motion to preclude evidence of highly reckless conduct or product misuse is **GRANTED**. (Doc. 30).

C.  Motion *in Limine* to preclude evidence of assumption of risk

Borden moves to preclude evidence that he assumed the risk of injuries related to walking over the conveyor. (Doc. 31). According to Borden, Mainline is precluded from raising an assumption of risk defense because he was injured in the workplace. (Doc. 33, at 12). Borden further avers that this affirmative defense is precluded because Mainline has not established Borden had subjective knowledge of the risk of inadvertent activation. (Doc. 33, at 13). Finally, Borden concludes that Mainline may not present evidence of assumption of risk because Mainline cannot establish that Borden's conduct was the sole cause of the accident. (Doc. 33, at 14-15). Mainline counters that it may present evidence of an assumption of risk defense because Borden was not required to use the conveyor as part of his employment. (Doc. 39, at 5-6). Mainline further asserts that there is a question of fact best left to the jury regarding whether Borden had subjective knowledge about the risks of the conveyor and whether Borden's conduct was the sole cause of his injuries. (Doc. 39, at 7-9).

Assumption of risk is an affirmative defense through which a strict liability defendant can introduce evidence of a plaintiff's conduct, and like with highly reckless conduct and product misuse, the defendant bears the burden of proof. *Dillinger*, 959 F.2d at 445. The

---

product misuse or highly reckless conduct. *See Reott,* 618 Pa. at 249; *see also Jara,* 718 A.2d at 794; *see also Cote*, 2022 WL 16815032, at *8.

assumption of risk defense is precluded where "[a]n employee who is required to use certain equipment in the course of his employment. . . has no choice in encountering a risk inherent in that equipment." *Jara*, 718 A.2d at 795. A plaintiff may still introduce evidence of assumption of risk where the injury occurred in the workplace but there is a question of fact regarding whether the plaintiff was required to use the allegedly defective equipment as part of his employment. *See D'Angelo v. ADS Mach. Corp.*, 128 F. App'x 253, 256 (3d Cir. 2005) (nonprecedential); *see also Sweitzer v. Oxmaster, Inc.*, No. CIV.A. 09-5606, 2010 WL 5257226, at *9 (E.D. Pa. Dec. 23, 2010).

Before a defendant could present evidence of assumption of risk, "the defendant has 'the burden of showing the subjective awareness of the defect by the injured party.'" *Dillinger*, 959 F.2d at 445 (quoting *Ellis v. Chicago Bridge & Iron Co.*, 376 Pa. Super. 220, 237 (1988)); *see also Wagner v. Firestone Tire & Rubber Co.*, 890 F.2d 652, 658 (3d Cir. 1989). Subjective awareness may be "proved by circumstantial evidence sufficient to permit an inference that the user was aware thereof and understood the risk." *Bascelli v. Randy, Inc.*, 488 A.2d 1110, 1115 (1985); *see also Sohngen v. Home Depot U.S.A., Inc.*, No. CIV.A. 04-1407, 2008 WL 324159, at *3 (W.D. Pa. Feb. 4, 2008). Where a defendant presents sufficient evidence to create an inference of subjective awareness, "[t]he issue should [be] submitted to the jury upon proper instructions." *Bascelli*, 488 A.2d at 1115; *see also Wagner*, 890 F.2d at 658; *see also Sohngen*, 2008 WL 324159, at *3.

Borden first argues that under *Jara*, Mainline may not raise an assumption of risk defense, because Borden was injured in the workplace. (Doc. 33, at 12). This reading of *Jara* is overbroad. 718 A.2d at 795. *Jara* holds that assumption of risk does not apply where a plaintiff "is required to use certain equipment in the course of his employment.." 718 A.2d at

795. A defendant may present evidence of assumption of risk where there is a question of fact regarding whether the plaintiff was required to use the suspect equipment as part of his employment. *See D'Angelo*, 128 F. App'x at 256; *see also Sweitzer*, 2010 WL 5257226, at *9. Here, Mainline has presented deposition testimony from which a reasonable jury may infer that Borden was never required to walk across the conveyor as part of his job as a forklift operator. (Doc. 38-3, at 13). Accordingly, Mainline is not precluded from presenting an assumption of risk defense on this basis. *See D'Angelo*, 128 F. App'x at 256; *see also Sweitzer*, 2010 WL 5257226, at *9.

The Court next addresses Borden's argument that Mainline cannot establish subjective knowledge and finds that Mainline has presented "circumstantial evidence sufficient to permit an inference that [Plaintiff] was aware [of the defect] and understood the risk." *Bascelli*, 488 A.2d at 1115. Mainline has presented deposition testimony from which a reasonable jury may infer that Plaintiff was aware that walking across the conveyor was dangerous and that the conveyor could activate if he triggered a sensor. (Doc. 38-3, at 5-6, 15-16). Based on this, the question of Borden's subjective knowledge and awareness of the risk of inadvertent activation should be decided by the jury. *See Bascelli*, 488 A.2d at 1115; *see also Wagner*, 890 F.2d at 658; *see also Sohngen*, 2008 WL 324159, at *3.

Finally, Borden argues that Mainline cannot introduce evidence of assumption of risk because Mainline cannot show Borden's conduct was the sole cause of his injuries. (Doc. 33, at 14-15). This conflates the defenses of product misuse and assumption of the risk.[4] While

---

[4] Borden cites to the Pennsylvania Superior Court's decisions in *Clark v. Bil-Jax, Inc.* and *Jara* for the proposition that evidence of assumption of risk is inadmissible where a defendant cannot show a plaintiff's conduct is the sole cause of his injury. (Doc. 33, at 14-15). However, in both cases, the court precluded evidence of assumption of risk because the

19

the Pennsylvania Supreme Court has held that highly reckless conduct and product misuse are subject to the same analysis, assumption of risk is distinct because "assumption of the risk involves knowledge of the product's defect where highly reckless conduct [and product misuse do] not." *Reott*, 618 Pa. at 243. Product misuse and highly reckless conduct require a showing of sole causation because the affirmative defenses only apply where a plaintiff's conduct is so unforeseeable or outrageous that it "either caused the injury sustained or superseded the defective nature of the product." *Reott*, 618 Pa. at 245–46. Assumption of risk, by contrast, turns on whether Borden was subjectively aware of a defect and associated risk, and deliberately acted anyway. *See Bascelli*, 488 A.2d at 1115; *Reott*, 618 Pa. at 243; *see also Wagner*, 890 F.2d at 658; *see also Sohngen*, 2008 WL 324159, at *3.

Because Mainline has presented an issue of fact regarding both whether Borden was required by his employer to walk over the conveyor and whether Borden was aware of the risk of inadvertent activation, Mainline is permitted to present evidence of assumption of risk. See *D'Angelo*, 128 F. App'x at 256; *see also Bascelli*, 488 A.2d at 1115; *see also Sohngen*, 2008

---

plaintiff was required to use the relevant equipment as part of their employment rather than because the plaintiff failed to show sole causation. *See Clark v. Bil-Jax, Inc.*, 763 A.2d 920 (Pa. Super. 2000); *see also Jara*, 718 A.2d at 795. While the court in *Clark* stated that "'evidence of a plaintiff's ordinary negligence may not be admitted in a strict products liability action … unless it is shown that the accident was solely the result of the user's conduct" while discussing assumption of risk, misuse of a product, and highly reckless conduct, assumption of the risk is not ordinary negligence. *Clark*, 763 A.2d at 923 (quoting *Charlton v. Toyota Indus. Equip.*, 714 A.2d 1043, 1047 (Pa. Super. 1998)); *Robinson v. B.F. Goodrich Tire Co.*, 664 A.2d 616, 618 (1995) (stating "[i]t has been said that assumption of the risk and contributory negligence may sometimes overlap because certain conduct may exhibit the elements of both. In general, however, the concepts are distinguishable" (citations omitted)). Assumption of risk involves a plaintiff deliberately acting despite knowing about a specific risk of danger from a defect, whereas ordinary negligence involves an individual acting without due care. *See Robinson*, 664 A.2d at 618. Sole causation is not an element of an assumption of risk defense. *See Robinson*, 664 A.2d at 618; *See Bascelli*, 488 A.2d at 1115; *see also Wagner*, 890 F.2d at 657; *see also Sohngen*, 2008 WL 324159, at *3.

WL 324159, at *3. Accordingly, Borden's motion to preclude evidence of assumption of risk is **DENIED**. (Doc. 31).

      D.  MOTION *IN LIMINE* TO PRECLUDE EVIDENCE BORDEN'S DUI CONVICTION

Borden's fourth motion *in limine* seeks to preclude evidence that Borden was previously convicted of driving under the influence ("DUI"). (Doc. 32). Mainline does not oppose this motion, and the motion is **GRANTED**. (Doc. 32).

## IV.  CONCLUSION

For the foregoing reasons, the motions *in limine* to preclude evidence of product misuse or highly reckless conduct (Doc. 30) and to preclude evidence of Borden's prior DUI conviction (Doc. 32) are **GRANTED**. The motion *in limine* to preclude evidence of assumption of risk (Doc. 31) is **DENIED**. The motion *in limine* to exclude expert testimony (Doc. 29) is **GRANTED** as to (1) Wharton's opinion that Tyoga was "required" to assume liability; (2) Wharton's opinion that Defendant was not required to provide warnings of the risk of inadvertent activation because Plaintiff would not have heeded such warnings; and (3) Wharton's opinions as informed by policies not developed until after Plaintiff's accident. The motion is **DENIED** as to (1) Wharton's opinion regarding Defendant's subjective awareness of the risk of inadvertent activation; and (2) Wharton's opinion regarding whether Tyoga would have turned off an alarm system. An appropriate Order follows.

                    **BY THE COURT:**

Dated: July 21, 2025          *s/ Karoline Mehalchick*
                    **KAROLINE MEHALCHICK**
                    **United States District Judge**

21