UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM BORDEN, | |
| Plaintiff, | CIVIL ACTION NO. 4:23-CV-01486 |
| v. | (MEHALCHICK, J.) |
| MAINLINE CONVEYOR SYSTEMS, INC., | |
| Defendant. | |

**MEMORANDUM**

Plaintiff William Borden ("Borden") initiated this productive liability action on August 10, 2023, by filing a complaint in the Pennsylvania Court of Common Pleas of Tioga County against Defendant Mainline Conveyor Systems, Inc. ("Mainline"), in which Borden alleges that Mainline is strictly liable under Pennsylvania law for manufacturing a defective and unreasonably dangerous product. (Doc. 1-2). Trial in this matter is scheduled to begin on Monday, August 11, 2025. On June 23, 2025, Borden filed a motion *in limine* to preclude evidence of assumption of risk. (Doc. 31). On July 21, 2025, this Court denied Borden's motion. (Doc. 51; Doc. 52). On July 25, 2025, Borden filed a motion for reconsideration regarding the Court's order. (Doc. 57). For the following reasons, Borden's motion for reconsideration is **DENIED**. (Doc. 57).

**I.   BACKGROUND AND PROCEDURAL HISTORY**

Borden alleges that while at work at a facility owned by his employer, Tyoga Container Company, Inc. ("Tyoga"), on July 21, 2022, he stepped on a mesh belt conveyor manufactured by Mainline that then activated and threw Borden off the conveyor, leaving him with severe lacerations on his left knee and lower extremity. (Doc. 1-2, at 4-7). The

conveyor was located at the end of an ISOWA Flexo Folder Gluer machine ("IOWSA machine") and moved materials downstream from the ISOWA machine for further processing. (Doc. 1-2, at 5). During his deposition, Borden testified that prior to his accident, he told his night shift supervisor, Dave Irwin ("Irwin"), that he was going to walk around the conveyor, to which Irwin replied, "no. . . you can cross." (Doc. 29-3, at 159). Borden further testified that "the reason [he] walked on the conveyor on the day of [his] fall was at the direction of Mr. Irwin." (Doc. 29-3, at 130). Borden alleges that Mainline is strictly liable under Pennsylvania law for manufacturing a defective and unreasonably dangerous product. (Doc. 1-2, at 13-16).

## II.     STANDARD OF REVIEW

Borden moves for reconsideration on two bases: 1) the Court erred in concluding that there is a dispute of fact as to whether Borden was required by his employer to walk over the conveyor; and 2) the Court erred in determining that there is a dispute of fact as to Borden's subjective knowledge of the specific risk of activation at the time of his accident. (Doc. 57). Mainline responds that the Court properly determined that both of these issues involve questions of fact for a jury. (Doc. 59).

"A motion for reconsideration is a device of limited utility which may only be used to correct manifest errors of law or fact or to present newly discovered precedent or evidence. *Harasco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). To prevail, a party seeking reconsideration must demonstrate one of the following: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion . . . ; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d

Cir. 1999). "Because federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." *Continental Cas. Co. v. Diversified Indus., Inc.*, 884 F. Supp. 937, 943 (E.D. Pa. 1995).

## III.  DISCUSSION

Borden's original motion *in limine* sought to preclude Mainline from presenting evidence that Borden assumed the risk of injuries by walking over the conveyor. (Doc. 31; Doc. 33). Borden asserted that Mainline should be precluded from raising an assumption of risk defense and presenting evidence of assumption of risk because Borden was injured in the workplace, Mainline could not establish Borden had knowledge of the risk of inadvertent activation, and Mainline could not establish Borden's conduct was the sole cause of his accident. (Doc. 33, at 12). The Court concluded that Borden's injury occurring in the workplace did not automatically preclude evidence of the assumption of risk because the relevant inquiry was whether there was a genuine dispute of fact regarding "whether Borden was required by his employer to walk over the conveyor." (Doc. 51, at 20). The Court further found that there was a genuine dispute of fact regarding "whether Borden was aware of the risk of inadvertent activation" and, as such, Borden's subjective knowledge at the time of the injury was a question for the jury. (Doc. 51, at 19-20). Finally, the Court concluded that a showing of sole causation is not required for a defendant to present evidence of assumption of risk. (Doc. 51, at 19-20).

Federal courts apply Pennsylvania law to determine whether evidence of a plaintiff's conduct prior to being injured is admissible in Pennsylvania strict liability suits. *Dillinger v. Caterpillar, Inc.*, 959 F.2d 430, 445 (3d Cir. 1992) (applying Pennsylvania law). Generally, "questions of negligence should not be introduced in products liability actions." *Jara v.*

*Rexworks Inc.*, 718 A.2d 788, 793 (Pa. Super. Ct. 1998). However, "the defendant is permitted to introduce evidence that the plaintiff assumed the risk or misused the product, and possibly may introduce evidence that the plaintiff engaged in highly reckless conduct to defeat a products liability claim." *Dillinger*, 959 F.2d at 445. Assumption of risk is an affirmative defense through which a strict liability defendant can introduce evidence of a plaintiff's conduct, and the defendant bears the burden of proof. *Dillinger*, 959 F.2d at 445. The assumption of risk defense is precluded where "[a]n employee who is required to use certain equipment in the course of his employment. . . has no choice in encountering a risk inherent in that equipment." *Jara*, 718 A.2d at 795. A plaintiff may still introduce evidence of assumption of risk where the injury occurred in the workplace, but there is a question of fact regarding whether a plaintiff was using equipment "'as directed by [his] employer,' as opposed to misusing it in a manner contrary to the training and instructions he had received." *D'Angelo v. ADS Mach. Corp.*, 128 F. App'x 253, 256 (3d Cir. 2005) (nonprecedential); *see also Sweitzer v. Oxmaster, Inc.*, No. CIV.A. 09-5606, 2010 WL 5257226, at *9 (E.D. Pa. Dec. 23, 2010).

      Before a defendant could present evidence of assumption of risk, "the defendant has 'the burden of showing the subjective awareness of the defect by the injured party.'" *Dillinger*, 959 F.2d at 445 (quoting *Ellis v. Chicago Bridge & Iron Co.*, 376 Pa. Super. 220, 237 (1988)); *see also Wagner v. Firestone Tire & Rubber Co.*, 890 F.2d 652, 658 (3d Cir. 1989). Subjective awareness may be "proved by circumstantial evidence sufficient to permit an inference that the user was aware thereof and understood the risk." *Bascelli v. Randy, Inc.*, 339 Pa. Super. 254, 264 (1985); *see also Sohngen v. Home Depot U.S.A., Inc.*, No. CIV.A. 04-1407, 2008 WL 324159, at *3 (W.D. Pa. Feb. 4, 2008). Where a defendant presents sufficient evidence to create an inference of subjective awareness of a specific risk of injury, "[t]he issue should [be]

4

submitted to the jury upon proper instructions." *Bascelli*, 339 Pa. Super. at 264; *see also Wagner*, 890 F.2d at 658; *see also Sohngen*, 2008 WL 324159, at *3. A court may only remove the issue of subjective knowledge from the jury where no reasonable jury could determine that the plaintiff did not have subjective knowledge of the specific risk of injury. *See Bascelli*, 339 Pa. Super. at 264; *see also Wagner*, 890 F.2d at 658; *see also Sohngen*, 2008 WL 324159, at *3.

Borden avers that this Court erred by stating that Borden was not required to walk across the conveyor as part of his job as a "forklift operator" because at the time Borden fell, "he was filling in as an operator trainee on the ISOWA machine". (Doc. 57, at 5-6) (citations omitted). This error in the name of Borden's position does not change the outcome of the motion *in limine*. *See Durst v. Durst*, 663 F. App'x 231, 237 (3d Cir. 2016); *see also Sexton v. Cmty. Life Team, Inc.*, No. 1:22-CV-02018, 2024 WL 4905976, at *3 (M.D. Pa. Nov. 27, 2024). A genuine dispute of fact still exists regarding whether Borden was walking across the conveyor as directed by his employer "as opposed to misusing [the conveyor] in a manner contrary to the training and instructions he had received." *D'Angelo*, 128 F. App'x at 256. Although the record reflects that Borden regularly saw others crossing the conveyor, there were steps placed at the side of the conveyor, saw Irwin cross the conveyor, was told by Irwin that he could cross the conveyor, and that he crossed the conveyor because he did not want to get in trouble (Doc. 57, at 5-10; Doc. 57-4, at 11), the record also includes Borden's own testimony that his job responsibilities involved standing at the side of the conveyor rather than walking over it, and in the days leading up to his accident, he would "walk around the machine" rather than over the conveyor. (Doc. 59-2, at 5-7). The record also contains testimony of Julie Glover, a human resource manager and safety coordinator at Tyoga, in

5

which she states Tyoga maintained a policy against walking on conveyors and that employees received safety training regarding the conveyors. (Doc. 59-3, at 3).

The record also reflects that Tyoga had a policy against walking on the conveyors, Tyoga employees received safety training regarding the conveyors, Borden's job responsibilities involved standing to the side of the conveyor rather than walking over it, and Borden had previously followed Tyoga's policy of not walking over conveyors. (Doc. 59-2, at 5-7; Doc. 59-3, at 3). Accordingly, there is a genuine dispute of fact regarding whether Borden was using the conveyor as directed by his employer or misusing it. *See D'Angelo*, 128 F. App'x at 256.

Borden's arguments regarding his subjective knowledge of the specific risk of activation at the time of his accident fail for a similar reason. The record contains genuine disputes of fact from which a reasonable jury may conclude that Borden had subjective knowledge of the specific risk of injury. *See Bascelli*, 339 Pa. Super. At 264. Borden argues that the Court erred in finding a dispute of fact because Borden testified that he was not aware that the conveyor could activate when it appeared to be deactivated and the IOSWA machine was not operating. (Doc. 57, at 1-5; Doc. 57-4, at 17-20) Borden further avers that it is undisputed that the IOSWA machine was not operating at the time of the accident and that the conveyor had no alarm or warning systems. (Doc. 57, at 4-5). Borden further presents a medical record showing that Borden told his doctor that he fell off a conveyor that "was off" when he fell. (Doc. 57, at 4; Doc. 57-4, at 27, 31). Finally, Borden argues that the record shows Borden did not have knowledge of the specific risk of inadvertent activation because George Wharton ("Wharton"), Mainline's engineering expert, wrote in his expert report that the conveyor was not defective so Borden could not have been aware of any risk of activation and Wharton

faulted Borden for "not knowing the risk" associated with the conveyor. (Doc. 57, at 10-11; Doc. 57-4, at 42-43).

While Borden presents evidence that he did not have subjective knowledge of the specific risk of inadvertent activation at the time of his fall, Mainline presents contradictory evidence which creates a genuine dispute of fact. First, a reasonable jury could interpret Wharton's expert report as supporting Mainline's assertion that Borden had subjective awareness of the specific risk of injury at the time of his accident. Wharton's report states the conveyor's "AUTO/MAN pushbutton on the operator pushbutton indicated both that the conveyor system was energized, and that the system was in AUTO mode when illuminated. And by simple observation, Mr. Borden should have noted that the mesh conveyors advanced bundles to the strapper when the ISOWA was not running." (Doc. 57-4, at 42). From this, a reasonable jury may infer that there were indications that the conveyor was energized that Borden should have noticed. Relatedly, Mainline presents Borden's testimony that he had never walked over the conveyor prior to his accident and that Irwin told him that he should not walk across the conveyor "if there's electricity running to [it]."(Doc. 59-2, at 3-4). Mainline further presents deposition testimony from John Cole, the plant manager at Tyoga, stating that he "would expect Mr. Borden to understand that if he intended to walk across the mesh belt conveyors" he should take certain safety precautions. (Doc. 59-1, at 3). As noted in this Court's prior decision on this matter, Mainline has also presented Borden's testimony from which a reasonable jury may conclude that Borden was aware that the conveyor could activate if a sensor was triggered. (Doc. 38-3, at 5-6, 15-16; Doc. 51, at 19). Even circumstantial evidence is sufficient to create a genuine dispute of fact regarding subjective knowledge. *Bascelli*, 339 Pa. Super. at 264; *see also Wagner*, 890 F.2d at 658. Subjective

knowledge is a question for the jury because Mainline presents evidence from which a reasonable jury may conclude that Borden knew the conveyor could activate if he triggered a sensor even when the conveyor appeared deactivated and the IOSWA machine was offline. *See Bascelli*, 339 Pa. Super. at 264; *see also Wagner*, 890 F.2d at 658; *see also Sohngen*, 2008 WL 324159, at *3. Accordingly, Borden's motion for reconsideration is **DENIED**. (Doc. 57).

IV. <u>CONCLUSION</u>

For the foregoing reasons, Borden's motion for reconsideration is **DENIED**. (Doc. 57). An appropriate Order follows.

BY THE COURT:

Dated: August 7, 2025

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**