**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| WILLIAM BORDEN,<br><br>Plaintiff,<br><br>v.<br><br>MAINLINE CONVEYOR SYSTEMS, INC.,<br><br>Defendant. | CIVIL ACTION NO. 4:23-CV-01486<br><br>(MEHALCHICK, J.) |

**MEMORANDUM**

Plaintiff William Borden ("Borden") initiated this action on August 9, 2023, by filing a complaint in the Tioga County Court of Common Pleas alleging Defendant Mainline Conveyor Systems, Inc. ("Mainline") is strictly liable for injuries Borden incurred after he stepped on a conveyor belt. (Doc. 1-2). On September 7, 2023, Defendant Mainline Conveyor Systems, Inc. ("Mainline") removed the action to the Court. (Doc. 1). The Court held a jury trial between August 11, 2025, and August 14, 2025, and the jury found that Mainline was not liable for Borden's injuries. (Doc. 88). Before the Court is Borden's motion for a new trial and renewed motion for judgment as a matter of law. (Doc. 97). For the following reasons, Borden's motion is denied.

## I. BACKGROUND AND PROCEDURAL HISTORY

In his complaint, Borden alleged that on July 21, 2022, while at work at a facility owned by his employer, Tyoga Container Company, Inc. ("Tyoga"), he stepped on a mesh belt conveyor manufactured by Mainline that then activated and threw Borden off the

conveyor, leaving him with severe lacerations on his left knee and lower extremity. (Doc. 1-2, at 4-7). Borden alleged that Mainline is strictly liable for these injuries under Pennsylvania law because it manufactured a defective and unreasonably dangerous product.[1] (Doc. 1-2, at 13-16). Borden testified that prior to his accident, Dave Irwin ("Irwin"), his supervisor, told him to follow him across the conveyor. (Doc. 112, at 98-99). Prior to trial, Borden moved to preclude Mainline from presenting evidence in support of the defenses of product misuse or highly reckless conduct and assumption of risk. (Doc. 30; Doc. 31). The Court granted Borden's motion to preclude evidence in support of product misuse or highly reckless conduct but denied Borden's motion to preclude evidence in support of assumption of risk. (Doc. 52). Borden filed a motion for reconsideration on the issue of assumption of risk which the Court denied. (Doc. 57; Doc. 74).

After a four day jury trial, the jury returned a verdict unanimously finding that Mainline was not liable because although the conveyor was defective and lacked necessary warnings, the defect and lack of warnings did not cause Borden's injuries. (Doc. 88, at 1). On September 11, 2025, Borden filed a motion for a new trial and renewed motion for judgment as a matter of law along with a brief in support. (Doc. 97; Doc. 98). On September 25, 2025, Borden filed an amended brief in support. (Doc. 104). On October 31, 2025, Mainline filed a brief in opposition and memorandum of law in support of its brief. (Doc. 118; Doc. 119). On November 17, 2025, Borden filed a reply brief. (Doc. 121). On December 8, 2025, Mainline filed a sur reply brief. (Doc. 127). Accordingly, this matter is ripe and ready for disposition.

[1] Borden also brought negligence and breach of warranty claims but withdrew those claims prior to trial. (Doc. 1-2, at 8-13, 16-17; Doc. 37, at 1).

## II. LEGAL STANDARDS

### A. MOTION FOR A NEW TRIAL

A losing party may move for a new trial or to alter or amend a judgment pursuant to Federal Rule of Civil Procedure 59. "The court may, on motion, grant a new trial on all or some of the issues – and to any party . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ." Fed. R. Civ. P. 59(a)(1)(A). The Court may grant a new trial "purely on a question of law;" or to correct a previous ruling "on a matter that initially rested within the discretion of the court, e.g. evidence rulings or prejudicial statements made by counsel" or "because [the Court] believes the jury's decision is against the weight of the evidence," among other grounds. *Klein v. Hollings*, 992 F.2d 1285, 1289-290 (3d Cir. 1993) (internal citations omitted). While the Court has wide discretion to order a new trial to correct rulings that initially rested in its discretion, it has relatively narrow discretion to overturn a verdict on the grounds that the verdict is against the weight of the evidence. *Klein*, 992 F.2d at 1289-290. The Third Circuit has long advised courts to be cautious before upsetting a verdict based on weight of the evidence, warning:

> [W]here no undesirable or pernicious element has occurred or been introduced into the trial and the trial judge nonetheless grants a new trial on the ground that the verdict was against the weight of the evidence, the trial judge in negating the jury's verdict has, to some extent at least, substituted his judgment of the facts and the credibility of the witnesses for that of the jury. Such an action effects a denigration of the jury system and to the extent that new trials are granted the judge takes over, if he does not usurp, the prime function of the jury as the trier of the facts.
>
> *Lind v. Schenley Indus., Inc.*, 278 F.2d 79, 90 (3d Cir. 1960).

The Third Circuit has further advised that:

> [T]he district court ought to grant a new trial on the basis that the verdict was against the weight of the evidence only where a miscarriage of justice would result if the verdict were to stand. Where the subject matter of the litigation is simple and within a layman's understanding, the district court is given less freedom to scrutinize the jury's verdict that in a case that deals with complex factual determinations . . . .
>
> *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1352 (3d Cir. 1991) (internal citations omitted).

The Court may also alter or amend a judgment pursuant to Fed. R. Civ. P. 59(e), otherwise known as a motion for reconsideration. *See Keifer v. Reinhart Foodservices, LLC.*, 563 F. App'x 112, 114 (3d Cir. 2014). A motion to alter or amend "may rely on one of three major grounds: (1) an intervening change in controlling law; (2) the availability of new evidence not available previously; or (3) the need to correct clear error of law or prevent manifest injustice." *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995) (internal quotation marks and brackets omitted); *see also Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669,677 (3d Cir. 1999). Thus, when a jury errs as a matter of law, a Court may rectify this error through a Rule 59(e) motion. *Keifer*, 563 F. App'x at 115; *see also United States v. Fiorelli*, 337 F.3d 282, 288 (3d Cir. 2003) ("A motion under Rule 59(e) is a 'device to relitigate the original issue' decided by the district court, and used to allege legal error") (quoting *Smith v. Evans*, 853 F.2d 155, 158-59 (3d Cir. 1988)). However, "motions for reconsideration should not be used to put forward arguments which the movant . . . could have made but neglected to make before judgment." *United States v. Jasin*, 292 F. Supp. 2d 670, 677 (E.D. Pa. 2003) (internal quotation marks and alterations omitted) (quoting *Reich v. Compton*, 834 F. Supp. 753, 755 (E.D. Pa. 1993), *rev'd in part and aff'd in part on other grounds*, 57 F.3d 270 (3d Cir. 1995)). Nor should they "be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the

Court and the litigant." *Donegan v. Livingston*, 877 F. Supp. 2d 212, 226 (M.D. Pa. 2012) (quoting *Ogden v. Keystone Residence*, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002)). Because federal courts have a strong interest in the finality of judgments, motions for reconsideration should only be granted sparingly. *Cont'l Cas. Co. v. Diversified Indus., Inc.*, 884 F. Supp. 937, 943 (E.D. Pa. 1995) (citing *Rottmund v. Cont'l Assurance Co.*, 813 F. Supp. 1104, 1107 (E.D. Pa. 1992)).

B. <u>JUDGMENT AS A MATTER OF LAW</u>

Under Federal Rule of Civil Procedure 50:

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
> (A) resolve the issue against the party; and
>
> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Fed. R. Civ. P. 50.

"[J]udgment as a matter of law should be granted sparingly." *Eshelman v. Agere Sys., Inc.*, 554 F.3d 426, 433 (3d Cir. 2009). A court may only grant judgment as a matter of law where no reasonable jury could reach a conclusion based on the evidence and the Court may not weigh evidence or determine the credibility of witnesses. *See Marra v. Philadelphia Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007), *as amended* (Aug. 28, 2007) (noting a Rule 50 motion should be "granted only if . . . there is insufficient evidence from which a jury reasonably could [make a certain determination]. . . [courts] must refrain from weighing the evidence, determining the credibility of witnesses, or substituting our own version of the facts for that of the jury" (citations and internal quotations omitted)); *see also Mente Chevrolet Oldsmobile Inc. v. GMAC*,

728 F. Supp. 2d 662, 670 (E.D. Pa. 2010), *aff'd*, 451 F. App'x 214 (3d Cir. 2011) (noting the same).

## III. DISCUSSION

Borden argues that a new trial is warranted because 1) the Court erred in denying Borden's motion *in limine* and motion for reconsideration regarding assumption of risk, 2) Borden is entitled to judgment as a matter of law regarding the assumption of risk defense, 3) the Court erred in allowing Mainline to introduce evidence and argument at trial concerning the reasonableness of Borden's conduct, 4) the Court erred by not instructing the jury that it was not to consider any conduct or alleged negligence by Borden or his employer, and 5) the weight of the evidence supports a finding that the defective conveyor was a cause of Borden's injuries. (Doc. 104, at 10-23). The Court will address each issue in turn.

### A. THE COURT DID NOT ERR IN DECLINING TO PRECLUDE EVIDENCE IN SUPPORT OF ASSUMPTION OF RISK.

Borden argues that the Court erred in denying its motions to preclude any evidence of assumption of risk. (Doc. 104, at 18-19). Borden avers that the Court should not have allowed evidence of assumption of risk because under the Superior Court of Pennsylvania's decision in *Jara v. Rexworks Inc.*, 718 A.2d 788 (Pa. Super. Ct. 1998), the "assumption of risk defense is not available in a product liability case where the plaintiff was injured in the workplace on equipment furnished by his employer." (Doc. 104, at 16-19). Mainline counters that the Court correctly ruled that Pennsylvania law allows for defendants to present an assumption of risk defense where "the injury occurred in the workplace but there is a question of fact regarding whether the plaintiff was required to use the allegedly defective equipment as part of his employment." (Doc. 119, at 15-16).

While evidence of a plaintiff's conduct is generally inadmissible in strict products liability cases, a defendant may introduce evidence of a plaintiff's conduct in support of an assumption of risk defense. *Dillinger v. Caterpillar, Inc.*, 959 F.2d 430, 445 (3d Cir. 1992). Under the assumption of risk defense, "if a [product's user] knows of a defect and voluntarily and unreasonably proceeds to use the product or encounter a known danger, this will constitute a defense to and preclude recovery in an action based on strict liability." *Bascelli v. Randy, Inc.*, 488 A.2d 1110, 1115 (Pa. Super. Ct. 1985). In *Jara*, the Pennsylvania Superior Court held that a trial court incorrectly charged the jury on assumption of risk in a the case involving a conveyor belt accident because the plaintiff "was required as part of his employment, to perform maintenance work on the conveyer." 718 A.2d at 795. Borden avers that this holding means that assumption of risk can never apply where an injury occurs in the workplace. (Doc. 104, at 16-19). However, subsequent courts, including the Third Circuit, have declined to read *Jara* so broadly. *See D'Angelo v. ADS Machinery Corporation*, 128 F. App'x 253, 256 (3d Cir. 2005) (nonprecedential); *see also Sweitzer v. Oxmaster, Inc.*, No. CIV.A. 09-5606, 2010 WL 5257226, at *9 (E.D. Pa. Dec. 23, 2010). Rather, courts have interpreted *Jara* to mean that assumption of risk is unavailable where a plaintiff was using workplace equipment as required by his employer and found that courts should leave the question of assumption of to the jury where there is "a genuine dispute concerning whether [a plaintiff] was using [workplace equipment] 'as directed by [his] employer,' as opposed to misusing it in a manner contrary to the training and instructions he had received while working [with his employer]." *D'Angelo*, 128 F. App'x at 256; *see also Sweitzer*, 2010 WL 5257226, at *9 (stating "[w]hether [the plaintiff] used [allegedly defective product] 'as directed' and whether [the plaintiff] knew of the specific defect are each factual determinations appropriate for the jury's resolution"). This

reading is consistent with the Pennsylvania standard jury instruction for assumption of risk which provides:

> Furthermore, if you find that [name of plaintiff] was required to use this product in the course of [his] [her] [their] employment, and that [name of plaintiff] *used the product as directed by [his] [her] [their] employer*, then you may not find that there was an assumption of risk by [name of plaintiff] that could bar [him] [her] [them] from recovery. Where an employee, in doing a job, *is required to use equipment as furnished by the employer*, the defense of assumption of the risk does not apply to this case.
>
> 16.130 [FNa1] (Civ) Defense of Assumption of Risk, Pa. SSJI (Civ), §16.130 (2024) (emphasis added).

These instructions do not contemplate a complete bar on the assumption of risk where an accident involved workplace equipment, as Borden insists is the case. Rather, the instructions suggest a bar where an employee "is required to use the equipment as furnished by the employer" which is consistent with the Court and the Third Circuit's reading of *Jara*. 16.130 [FNa1] (Civ) Defense of Assumption of Risk, Pa. SSJI (Civ), §16.130 (2024); *see D'Angelo*, 128 F. App'x at 256. The caselaw Borden cites all states that the workplace rule applies where an employee is required to use that equipment as part of their employment. (Doc. 104, at 16); *see Jara*, 718 A.2d at 795; *see also Clark v. Bil-Jax, Inc.*, 763 A.2d 920, 925 (Pa. Super. Ct. 2000); *see also Staub v. Toy Factory, Inc.*, 749 A.2d 522, 530 (Pa. Super. Ct. 2000). Thus, Borden cites no caselaw contradicting the Court's reading of *Jara*, and the Court's reading is consistent with subsequent precedent and the Pennsylvania model jury instructions. *See* 16.130 [FNa1] (Civ) Defense of Assumption of Risk, Pa. SSJI (Civ), §16.130 (2024); *see also D'Angelo*, 128 F. App'x at 256; *see also Sweitzer*, 2010 WL 5257226, at *9.

Based on the evidence presented, the Court correctly allowed Mainline to present evidence of assumption of risk because there was a genuine dispute of fact regarding whether Borden was required to walk over the conveyor as part of his employment. Prior to trial, the

only evidence Borden presented that he was required to step over the conveyor as part of his job responsibilities was his own testimony that Irwin told him to. (Doc. 57-4, at 11-12). Mainline presented evidence from which a reasonable jury could disbelieve Borden's testimony and conclude that Borden was not permitted to step on the conveyor, such as Borden's own testimony that he never stepped on the conveyor as part of his job before, and testimony from Julie Glover, a human resources and safety manager at Tyoga, that Tyoga specifically instructed and trained its employees not to step on conveyors. (Doc. 59-2, at 5-7; Doc. 59-3, at 3). From this, the Court correctly found that there was "a genuine dispute [of fact] concerning whether [Borden] was using [the conveyor] 'as directed by [his] employer,' as opposed to misusing it in a manner contrary to the training and instructions he had received while working [Tyoga]." *D'Angelo*, 128 F. App'x at 256; *see Sweitzer*, 2010 WL 5257226, at *9. The Court properly denied Borden's motion *in limine* and motion for reconsideration. (Doc. 52; Doc. 74). The Court **DENIES** Borden's motion for a new trial based on his objections to the Court denying his motion *in limine* and motion for reconsideration. (Doc. 97).

B. BORDEN IS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW ON MAINLINE'S ASSUMPTION OF RISK DEFENSE.

At trial, Borden moved for judgment as a matter of law on the issue of assumption of risk. (Doc. 114, at 16-19). Borden now brings a renewed motion arguing that Mainline "failed to introduce any evidence that Plaintiff knew of the specific defect, i.e., that the conveyor would suddenly and automatically start up without warning when the ISOWA machine was powered off." (Doc. 104, at 16). According to Borden, he is entitled to judgment as a matter of law on the issue of assumption of risk because no reasonable jury could determine that he

was aware of the risk of the conveyor automatically starting when the ISOWA machine[2] was powered off. (Doc. 104, at 16). Defendants counter that a jury may infer knowledge of a specific defect based on circumstantial evidence, and Defendants presented ample evidence from which a reasonable jury could conclude that Borden was aware of the risk of the conveyor automatically starting even if the ISOWA machine was powered off. (Doc. 119, at 17-21).

To prevail on an assumption of risk defense, "the defendant has 'the burden of showing the subjective awareness of the defect by the injured party.'" *Dillinger*, 959 F.2d at 445 (citations omitted). "Assumption of risk thus depends upon subjective awareness of the defect, which can be proved by circumstantial evidence sufficient to permit an inference that the plaintiff was aware [of] and understood the risk." *Ashmen v. Big Boulder Corp.*, 322 F. Supp. 3d 593, 596 (M.D. Pa. 2018) (citations and internal quotations omitted); *see Bascelli*, 488 A.2d at 1115 (noting that a defendant may prove awareness of a risk through circumstantial evidence); *see also Sohngen v. Home Depot U.S.A., Inc.*, No. CIV.A. 04-1407, 2008 WL 324159, at *3 (W.D. Pa. Feb. 4, 2008) (noting the same). Where a defendant presents sufficient evidence to create an inference of subjective awareness, "[t]he issue should [be] submitted to the jury upon proper instructions." *Bascelli*, 339 Pa. Super. at 264; *see also Wagner v. Firestone Tire & Rubber Co.*, 890 F.2d 652, 657 (3d Cir. 1989) (finding that assumption of risk was a jury question because while the plaintiff testified that he was not aware of the risk, a reasonable jury could conclude based on other evidence, such as evidence regarding the plaintiff's training, that he was aware of the risk); *see also Sohngen*, 2008 WL 324159, at *3 (determining that whether a

[2] As noted at trial, an ISOWA machine is a machine that creates boxes on a conveyor system. (Doc. 111, at 143; Doc. 112, at 9-10).

product user knew about the dangers of a product was a jury question based on evidence that the user was warned, through training, about the potential dangers of the product).

The Court finds that Mainline presented evidence from which a reasonable jury could conclude that Borden was aware of the risk of the conveyor automatically activating, even when the ISOWA machine appeared to be deactivated. During trial, Borden himself testified that various supervisors told him not to walk on conveyors from the start of his employment at Tyoga. (Doc. 112, at 121-22). Mainline also read into the record the deposition testimony of Julie Glover, a Tyoga human resources specialist, which indicated that Borden was specifically told at his orientation that he should never walk on the conveyors. (Doc. 113, at 56). During cross examination, the Defense noted that Borden previously testified during his deposition that Julie Glover led his orientation but contradicted that at trial. (Doc. 112, at 122). Borden testified that he did not know the conveyor could start if the ISOWA machine was deactivated, however, a reasonable jury could have disbelieved this testimony and determined that Borden knew about the risk based on evidence that he would have learned about the danger of the conveyor automatically starting during training. (Doc. 112, at 104-05, 121-22; Doc. 113, at 56); *see Wagner*, 890 F.2d at 654 (noting that a reasonable jury could conclude subjective awareness of a defect based on evidence of the training the plaintiff received regarding the product); *see also Sohngen*, 2008 WL 324159, at *3 (noting the same). Accordingly, the Court **DENIES** Borden's renewed motion for judgment as a matter of law. (Doc. 97).

### C. THE COURT DID NOT ERR BY ADMITTING CIRCUMSTANTIAL EVIDENCE OF BORDEN'S KNOWLEDGE.

Borden next argues that the Court erred by allowing Mainline "to introduce extensive evidence concerning what was ultimately nothing more than scrutiny of whether Plaintiff's

conduct was reasonable, in violation of the Court's pre-trial Order and controlling Pennsylvania law." (Doc. 104, at 19). According to Borden, the Court improperly allowed Mainline to present inadmissible evidence of Borden's negligence such as evidence that Borden did not follow Tyoga's policies and training, that Borden could have walked around the conveyor, or that Borden could have checked if the conveyor was energized before walking on it. (Doc. 104, at 19-22). Borden concludes that "allowing a defendant to introduce evidence of a plaintiff's alleged improper conduct at trial constitutes reversible error." (Doc. 104, at 19). The Court disagrees with this characterization of the evidence and finds that it did not err in allowing its admission.

Evidence of contributory negligence is inadmissible in strict products liability actions. *See Kupetz v. Deere & Co.*, 644 A.2d at 1221 (Pa. Super. Ct. 1994). However, evidence supporting the subjective knowledge requirement of the assumption of risk defense can overlap with evidence of contributory negligence, and in such cases the Court must instruct the jury it may consider such evidence as to assumption of risk but not consider it as contributory negligence. *See Kupetz*, 644 A.2d at 1221 (stating "in situations where the evidence submitted at trial overlaps and exhibits elements of both assumption of risk and contributory negligence, an assumption of risk jury instruction is warranted while a contributory negligence instruction is not"). As discussed *supra* Section III.B, evidence of a plaintiff's training and typical practices when using a product can provide circumstantial evidence that the plaintiff knew of the specific risk associated with a defect and such evidence is admissible given the Court provides proper instructions. *See Wagner*, 890 F.2d at 654 (finding that a reasonable jury could infer subjective knowledge based on evidence of training and common practices); *see also Sohngen*, 2008 WL 324159, at *3 (stating "[t]he record reflects

evidence of [the product user's] training sufficient to permit an inference that [the use] knew of the dangers associated with [the product]"). Further, evidence a plaintiff was trained and told not to use a product a certain way in the workplace is also relevant to an assumption of risk defense because the assumption of risk defense only applies in the workplace where the plaintiff was not required to use that product as part of their job. *See* 16.130 [FNa1] (Civ) Defense of Assumption of Risk, Pa. SSJI (Civ), §16.130 (2024); *see also D'Angelo*, 128 F. App'x at 256; *see also Sweitzer*, 2010 WL 5257226, at *9. Finally, even outside of assumption of risk, evidence of a plaintiff's training and common work practices can be relevant to a defendant's defense against an insufficient warning claim because such evidence can rebut the presumption that if a product had additional warnings, the plaintiff would have headed those warnings. *See Phillips v. A-Best Prods. Co.*, 542 Pa. 124, 132 (1995) (finding that because a jury determined that a product user knew of a danger associated with a product due of workplace training regarding the product, a failure to warn could not have caused the plaintiff's injuries); *see Nesbitt v. Sears, Roebuck & Co.*, 415 F. Supp. 2d 530, 543-44 (E.D. Pa. 2005) (finding that evidence of a plaintiff and his coworker's common practices was admissible to rebut the presumption that the plaintiff would have heeded additional warnings)

As the Court noted during trial, while the evidence that Borden 1) never walked on the conveyor prior to his accident, 2) was specifically told not to walk on the conveyors and 3) was told that if he walked on the conveyor without checking if they were energized the conveyor could start could speak to contributory negligence, Mainline offered the evidence to show Borden's subjective knowledge of the purported defect. (Doc. 113, at 10). Mainline's evidence regarding Borden's training and typical practices was circumstantial evidence that he knew the conveyor could activate even where the ISOWA machine was powered off. *See*

*Wagner*, 890 F.2d at 654; *see also Sohngen*, 2008 WL 324159, at *3. The evidence also contradicted Borden's testimony that he was required to walk on the conveyor as part of his employment and Mainline's assumption of risk defense, in part, turned on whether the jury determined that Borden was required to walk on the conveyor as part of his employment. *See* 16.130 [FNa1] (Civ) Defense of Assumption of Risk, Pa. SSJI (Civ), §16.130 (2024); *see also D'Angelo*, 128 F. App'x at 256; *see also Sweitzer*, 2010 WL 5257226, at *9. The evidence was further relevant to Mainline's defense against Borden's insufficient warnings claim because a reasonable jury could interpret it as rebutting the presumption that Borden would have heeded additional warnings. *See Nesbitt*, 415 F. Supp. 2d at 543-44. The Court instructed the jury on assumption of risk and instructed the jury not to consider Borden's negligence. (Doc. 87, at 21-22). Accordingly, the Court did not err by admitting evidence of Borden's training and typical practices and the Court **DENIES** Borden's motion for a new trial on the basis of the admission of such evidence. (Doc. 97).

D. THE COURT PROPERLY INSTRUCTED THE JURY NOT TO CONSIDER THE NEGLIGENCE OF BORDEN OR ANYONE ELSE.

Borden avers that he is entitled to a new trial because the "Court erred in failing to include in its final charge to the jury Plaintiff's requested instruction that the jury should not consider any conduct or alleged negligence of Plaintiff or Plaintiff's employer and co-workers in assessing liability." (Doc. 104, at 23). Mainline counters that the Court properly utilized standard Third Circuit and Pennsylvania instructions and instructed the jury on what it may and may not consider in evaluating strict liability claims. (Doc. 119, at 22).

While a "party is entitled to a jury instruction that accurately and fairly sets forth the current status of the law . . . [n]o litigant has a right to a jury instruction of its choice, or precisely in the manner and words of its own preference." *Douglas v. Owens*, 50 F.3d 1226,

1233 (3d Cir. 1995). While a court is not required to apply model jury instructions, model instructions are generally presumed reasonable unless a party establishes they inaccurately state the law. *See United States v. Petersen*, 622 F.3d 196, 208 (3d Cir. 2010) (rejecting a challenge to a court's use of the Third Circuit's standard jury instructions because the plaintiff provided no argument as to why the Third Circuit's instructions incorrectly state the law); *see also Stuckey v. Blessing*, No. 1:11-CV-00436, 2013 WL 1632555, at *7 (M.D. Pa. Apr. 16, 2013) (rejecting a challenge to the court's use of standard jury instructions because "defendants have [not] persuasively demonstrated that different or supplemental jury instructions are necessary or warranted in this case"). A district court "has broad discretion concerning the particular language used in a jury instruction, and need not give a proposed instruction if the essential points are already covered by the instructions given." *Bullen v. Chaffinch*, 336 F. Supp. 2d 342, 351–52 (D. Del. 2004)*; see Stuckey*, 2013 WL 1632555, at *7 (rejecting a party's request for the court to read jury instructions conveying information already covered by the model instructions).

The Court provided the jury with the following instruction: "In determining whether a product is defective or a factual cause of Plaintiff Borden's harm, you may not consider any negligence of Plaintiff Borden. Under Pennsylvania law, the manufacturer is not permitted to defend against this claim by asserting that Plaintiff Borden was at fault." (Doc. 87, at 21). This instruction was taken from the Pennsylvania standard jury instructions for strict products liability actions. *See* 16.120 [FNa1] (Civ) Defenses Not Available in Strict Liability Claims, Pa. SSJI (Civ), §16.120 (2024). The Court also provided the jury with the Pennsylvania standard instruction regarding strict liability responsibility being nondelegable which reads: "A defendant in a strict liability case who puts a defective product into the market remains

liable to the user or consumer, despite the foreseeable conduct, negligent or otherwise, of others, for the harm created by the product as a result of the defect." (Doc. 87, at 20); 16.80 [FNa1] (Civ) Strict Liability Responsibility Nondelegable, Pa. SSJI (Civ), §16.80 (2024). Thus, the Court instructed the jury, in line with Pennsylvania's standard jury instructions, that the jury may not consider Borden or anyone else's negligence in reaching its strict liability determination. (Doc. 87, at 20-21). As the Court noted during trial, Borden requested instructions duplicative of the standard jury instructions. (Doc. 114, at 10). The Court did not err by reading the standard jury instructions rather than adding additional, duplicative instructions. *See Bullen*, 336 F. Supp. 2d at 351–52*; see also Stuckey*, 2013 WL 1632555, at *7. The Court **DENIES** Borden's motion for a new trial on the basis of improper jury instructions. (Doc. 97).

### E. THE COURT DOES NOT FIND THE JURY'S VERDICT TO BE AGAINST THE WEIGHT OF THE EVIDENCE.

Borden argues that he is entitled to a new trial because "[t]he jury's verdict finding that the conveyor was defectively designed and lacked necessary warnings and instructions, but not the cause of Plaintiff's injuries was against the weight of the evidence." (Doc. 104, at 11). Mainline counters that Borden's argument is based on speculation about how the jury concluded the conveyor was defective and the jury could have determined that it was only defective because of a lack of warnings. (Doc. 119, at 8-12). According to Mainline, "[Borden's] Motion for New Trial is premised entirely on speculation as to the jury's reasoning and is insufficient to satisfy the extremely high threshold for granting a new trial." (Doc. 119, at 12).

A losing party may move for a new trial under Federal Rule of Civil Procedure Rule 59(a) based on the jury's verdict being against the "weight of the evidence." *Williamson*, 926

F.2d at 1353. "[N]ew trials because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Williamson*, 926 F.2d at 1353; *see Olechna v. Dinoia*, 45 F. App'x 98, 99 (3d Cir. 2002) (nonprecedential). Losing parties face a high bar when challenging a jury verdict based on the weight of the evidence and courts are generally reluctant to grant a new trial based on a weight of the evidence challenge. *See Klein*, 992 F.2d at 1290 (noting that while district courts have wide discretion when granting a new trial, appellate courts review a decision to grant a new trial based on the weight of the evidence with "closer scrutiny" (citations and internal quotations omitted)); *see also Valenti v. Allstate Ins. Co.*, 243 F. Supp. 2d 221, 224 (M.D. Pa. 2003), *aff'd*, 94 F. App'x 970 (3d Cir. 2004) (stating "where the ground for a new trial is that the jury's verdict is against the clear weight of the evidence, the court should proceed cautiously, because such a ruling would, by its nature, supplant the court's judgment for that of the jury"); *see also Liger6, LLC v. Antonio*, No. CV 13-4694, 2019 WL 1487243, at *4 (D.N.J. Apr. 3, 2019) (stating "the Court's discretion is limited in reviewing a motion for a new trial when, as is the case here, said motion is based on the weight of the evidence").

Courts must give great deference to a jury's finding of fact and a court should leave the jury's verdict intact where there is a rational explanation for it. *See Cipriani v. Lycoming Cnty. Hous. Auth.*, 177 F. Supp. 2d 303, 310 (M.D. Pa. 2001) (stating "[g]enerally, a court will sustain a jury verdict 'if, drawing all reasonable inferences in favor of the prevailing party, there is a reasonable basis to uphold the verdict; courts will examine the record for evidence that could reasonably have led to the jury's verdict'" (quoting *Kidd v. Com. of Pa.*, No. CIV. A. 97-CV-5577, 2001 WL 1159770, at *1 (E.D. Pa. Aug. 21, 2001), *aff'd*, 37 F. App'x 588 (3d

Cir. 2002)); *see also* *Bradshaw v. Capacity of Texas Inc.*, No. CV 99-6366, 2016 WL 8716595, at *5 (E.D. Pa. Aug. 26, 2016) (rejecting weight of the evidence challenge to a jury's finding that a product was defective but not the cause of the plaintiff's fall because the jury could have reasonably concluded, based off the evidence, that the product's lack of warnings was the sole defect and that the lack of warnings was not a cause of the plaintiff's fall). While making this determination, the Court must be mindful that a jury's role is to make its own credibility determinations, and the Court should not substitute the jury's judgment for its own simply because the Court may have reached a certain conclusion. *Williamson*, 926 F.2d at 1353-354 (finding a district court erred by finding a jury's verdict was against the weight of the evidence because although the evidence supporting the jury's determination was "[a]dmittedly . . . not overwhelming" the court's role is not to determine what evidence the jury ought to believe or disbelieve); *see also* *Dougherty v. Marshalls of MA, Inc.*, No. 08-CV-3443, 2011 WL 1562251, at *5 (E.D. Pa. Apr. 26, 2011), *aff'd*, 460 F. App'x 132 (3d Cir. 2012) (stating "[c]redibility determinations are the unique province of a fact finder, and a jury may rationally reject even uncontradicted testimony which it finds unconvincing" (citations and internal quotations omitted)). Courts should not overturn a jury verdict based on speculation that the jury acted improperly or ignored the Court's instructions. *See* *Shushereba v. R.B. Indus., Inc.*, 104 F.R.D. 524, 528 (W.D. Pa. 1985) (stating "[Plainitff's] claim of jury misconduct amounts to pure speculation and conjecture . . . A jury's verdict cannot be upset by speculation"); *see also* *Gidlewski v. Bettcher Indus., Inc.*, 619 F. Supp. 87, 93 (E.D. Pa. 1985), *aff'd*, 779 F.2d 42 (3d Cir. 1985) (stating "a verdict may not be overturned on a party's speculation that the jury may have misinterpreted a piece of evidence"); *see also* *Williams v. Linode Ltd. Liab. Co.*, No. 2:22-CV-01618, 2024 WL 1355498, at *2 (E.D. Pa. Mar. 29, 2024), *aff'd*, No. 24-1793, 2025 WL

2417756 (3d Cir. Aug. 21, 2025) (stating "a judge 'cannot speculate as to the content of the jury's deliberations.' The judge must assume the jury understood and followed the instructions it received" (citations omitted)).

The jury answered four questions on the verdict form. (Doc. 88, at 1). The jury answered yes to the following questions: 1) "Was the mesh conveyor defectively designed as supplied by Defendant Mainline Conveyor Systems, Inc.?" and 2) "Was the conveyor defective as supplied by Defendant Mainline because it lacked necessary warnings and instructions?" (Doc. 88, at 1). The jury answered no to the following question: "Was the defective condition of the conveyor belt a cause of Plaintiff William Borden's injuries: (a) Design Defect: . . . (b) Lack of Warnings and Instructions." (Doc. 88, at 1). The parties present different interpretations of this verdict. According to Borden, the jury concluded, based on the first and third questions, that 1) the conveyor was defectively designed in that it automatically started even when the conveyor and the ISOWA machine appeared to be powered off but 2) somehow, the conveyor starting was not a cause of Borden's fall. (Doc. 104, at 11-14). Borden argues that allowing this verdict to stand would be a miscarriage of justice because there is no evidence in the record contradicting Borden's contention that he fell because the conveyor automatically started. (Doc. 104, at 11-14). Mainline counters that the Borden's argument is premised on impermissible assumptions regarding the jury's findings. (Doc. 119, at 8-12). According to Mainline, the jury could have concluded that the conveyor was only defective due to a lack of warnings and that the lack of warnings was not a cause of Borden's fall. (Doc. 119, at 8-14).

The Court will not disturb the jury's verdict because, making all inferences in favor of Mainline as the prevailing party, there is a rational explanation for the jury's conclusions. *See*

*Cipriani*, 177 F. Supp. 2d at 310. Borden's argument assumes that the jury found that the conveyor was defective because it automatically started even when it and the ISOWA machine appeared to be powered off, and that the jury improperly considered Borden's own negligence while determining that the automatic startup was not a cause of Borden's fall. (Doc. 104, at 11-14). The Court agrees that there was no dispute of fact that the conveyor's automatic startup system caused Borden to fall, and in fact, the Court read a stipulated statement to the jury stating ""[a]s [Borden] was stepping across the mesh belt conveyor, the conveyor started moving, causing him to fall." (Doc. 111, at 175). However, while it is true that the jury verdict form had separate interrogatories for design defect and warning defect, the verdict form's interrogatories regarding design defect did not ask whether the conveyor belt was defectively designed because of its automatic startup system. (Doc. 88, at 1). Rather, it simply asked if the defect was defectively designed and if that defect was a cause of Borden's fall. (Doc. 88, at 1). Notably, the four questions on the verdict slip the jury answered are identical to the first four questions Borden proposed asking the jury. (Doc. 70, at 2-3; Doc. 88, at 1).

The Court cannot assume the jury necessarily found that the conveyor was defective because of its automatic startup system because the verdict form does not mention the automatic startup system and Mainline presented evidence during trial that the automatic startup was not a defect. (Doc. 88, at 1). During trial, both parties presented expert testimony regarding the design of the conveyor. Borden presented the expert testimony of Daryl L. Ebersole ("Ebersole") who testified that the conveyor was defectively designed as supplied by Mainline because of the automatic startup system and Mainline could have used numerous other designs which would reduce or eliminate the risk of individuals falling off it. (Doc. 112,

at 4-43). Mainline presented the expert testimony of George Wharton ("Wharton") who testified that the automatic startup of the conveyor was not a design defect because the conveyor needed to automatically start to avoid boxes crashing into each other and to keep boxes moving at a pace sufficient to keep up with the pace of the ISOWA machine. (Doc. 113, at 143-45, 154). It was up to the jury as the ultimate finder of fact to agree or disagree with the experts' dueling conclusions that the conveyor's automatic startup system did or did not constitute a defect and the jury was free to credit or disregard the opinions of either Ebersole or Wharton. *See Williamson*, 926 F.2d at 1353-354 (noting that the role of the jury is to determine which evidence and witnesses are credible and which testimony to believe); *see also Dougherty*, 2011 WL 1562251, at *5 (noting the same). While the jury answered separate interrogatories regarding design defect and failure to warn, nowhere does the verdict form state that the jury found the conveyor's automatic startup system constituted a design defect. (Doc. 88, at 1).

The jury's verdict can be explained by inferring that the jury opted to credit Mainline's evidence that the automatic startup system did not constitute a defective design. (Doc. 113, at 143-45, 154). It could further be inferred that the jury considered the conveyor's lack of warnings as a defect when answering both the design defect and insufficient warnings interrogatories and reasonably concluded that the lack of warnings was not a cause of Borden's fall. A jury may reasonably conclude that insufficient warnings were not a cause of an injury where the defendant presents evidence sufficient to overcome the presumption that a plaintiff would have heeded the warnings even if they existed. *See Bradshaw*, 2016 WL 8716595, at *5 (stating "[t]he jury question of causation would have necessarily turned on whether [Plaintiff] would have heeded a proper warning. Although there is a presumption in

Pennsylvania that a plaintiff would follow an adequate warning, such a presumption can be rebutted by evidence that the warning would not have been heeded" (citations omitted)). As discussed *supra* Section III.B., Mainline presented evidence that Tyoga's trainers and Borden's supervisors warned him during training not to walk on the conveyor due to the potential danger and that Borden never walked over the conveyor before. (Doc. 112, at 121-22; Doc. 113, at 56). A reasonable jury could conclude, based on this evidence, that Borden would not have heeded additional warnings because he was already warned and did not heed the warnings.[3] *See Phillips*, 542 Pa. at 132 (finding that a failure to warn cannot be a cause of a plaintiff's injuries where a jury determined, based on evidence of the plaintiff's workplace training, that the plaintiff was already warned about the dangers of the product and disregarded those warnings); *see also Nesbitt*, 415 F. Supp. 2d at 543-44 (finding that evidence

[3] The Court notes that Borden relies on Pennsylvania caselaw, but federal courts evaluating Rule 59 motions must apply the federal weight of the evidence standard. *See Olechna*, 45 F. App'x at 100 n.3 (stating "[i]t is well-settled, however, that the denial of a new trial under Federal Rule of Civil Procedure 59 is a matter of procedure governed by federal law and not state law"). However, Pennsyvlania's weight of the evidence standard is substantively similar to the federal standard and Pennsylvania caselaw can be persuasive. *See Olechna*, 45 F. App'x at 100 n.3. The Pennsylvania caselaw Borden relies on is distinguishable. Borden first cites *Adkins v. Johnson & Johnson*, 231 A.3d 960, 966 (Pa. Super. Ct. 2020), which applies Ohio law, not Pennsylvania law. *Adkins* would be distinguishable even if it applied Pennsylvania law. *Adkins* involved an allegedly defective medical device surgeons implanted into patients. 231 A.3d at 963. The insufficient warning claim in *Adkins* involved the defendant failing to warn the plaintiff's surgeon, not the plaintiff herself. 231 A.3d at 963. Thus, the verdict in *Adkins* could not have been explained through the jury determining the plaintiff would not have heeded the warnings because the warnings would have to have been heeded by the surgeons, not the plaintiff herself. 231 A.3d at 963. Borden also relies on *Irey v. Com., Dep't of Transp.*, 72 A.3d 762, 772 (Pa. Commw. Ct. 2013). However, *Irey* is not a strict products liability case. Rather, the Commonwealth Court evaluated whether a reasonable jury could conclude that the Pennsylvania Department of Transportation's negligence in leaving standing water on a road was not the cause of a plaintiff's car accident. 72 A.3d at 772.

of a plaintiff and his coworker's common practices could rebut the presumption that the plaintiff would have heeded additional warnings).

The Court must exercise restraint in evaluating whether the jury's verdict is against the weight of the evidence and cannot, in this case, conclude that allowing the jury's verdict to stand would be "a miscarriage of justice or . . . [that the verdict] cries out to be overturned or shocks our conscience." *Williamson*, 926 F.2d at 1353; *see Olechna*, 45 F. App'x at 99. The Court cannot overturn the jury's verdict based on speculation that the jury considered improper negligence factors when reaching its conclusions because the Court instructed the jury not to consider such factors and there is a rational explanation for the jury's decision. (Doc. 87, at 20-21); *see Cipriani*, 177 F. Supp. 2d at 310 (noting a Court should not overturn a verdict where there is a rational explanation for the jury's decision); *see Shushereba*, 104 F.R.D. at 528 (noting that a court may not overturn a verdict based on speculation of juror misconduct); *see also Williams*, 2024 WL 1355498, at *2 (noting that a court must assume the jury followed the Court's instructions); *see Bradshaw*, 2016 WL 8716595, at *5 (declining to overturn a jury verdict that a product was defective but the defect was not the cause of the plaintiff's accident because the jury could have concluded, based on the evidence, that a failure to warn was the sole defect and that the failure to warn did not cause the plaintiff's accident). Thus, The Court **DENIES** Borden's motion for a new trial.[4] (Doc. 97).

[4] The Court notes that Borden requests, in the alternative to a new trial, that the Court alter or amend judgment on the issue of causation. (Doc. 97, at 20-21; Doc. 104, at 24). Because, as discussed above, the Court rejects Borden's arguments that the Court made errors of law and that the verdict is against the weight of the evidence, the Court **DENIES** Borden's alternative request to alter or amend judgment on the issue of causation. (Doc. 97, at 20-21; Doc. 104, at 24); *see Zarow-Smith v. New Jersey Transit Rail Operations, Inc.*, 953 F. Supp. 581, 592 (D.N.J. 1997) (denying a motion to alter or amend judgment for the same reasons the court denied a motion for a new trial); *see also Donahue v. City of Hazleton*, No. CV 3:14-1351, 2022 WL 4486977, at *2 (M.D. Pa. Sept. 27, 2022), *aff'd sub nom. Donahue v. City of Hazleton,*

## IV. CONCLUSION

For the foregoing reasons, Borden's motion for a new trial and judgment as a matter of law is **DENIED**. (Doc. 97). An appropriate order will follow.

**BY THE COURT:**

**Dated: August 6, 2026**

s/ Karoline Mehalchick

**KAROLINE MEHALCHICK**
**United States District Judge**

*PA*, No. 22-3029, 2023 WL 7271079 (3d Cir. Nov. 3, 2023) (denying a motion for a new trial and motion to alter or amend judgment together where the plaintiff did not identify any legal errors committed by the Court and the evidence was sufficient to support the verdict).